IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2004

## STATE OF TENNESSEE v. RODERICK DAVIS

**Appeal from the Criminal Court for Shelby County**
**Nos. 99-08211, 12     J. C. McLin, Judge**

---

**No. W2002-02338-CCA-R3-CD  - Filed December 13, 2004**

---

The defendant, Roderick Davis, was convicted by a Shelby County Criminal Court jury of especially aggravated robbery, for which he received a sentence of 24 years, and especially aggravated burglary, for which he received a sentence of eleven years.  The trial court imposed the sentences to run consecutively.  On appeal, the defendant claims that the convicting evidence is insufficient and that the trial court erroneously excluded alibi evidence, instructed the jury, and sentenced him. Upon review, we affirm the conviction of especially aggravated robbery, reverse the conviction of especially aggravated burglary and modify it to aggravated burglary, and modify the sentences.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed in Part;**
**Reversed in Part; and Modified.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined.   DAVID G. HAYES, J., filed a dissenting opinion.

Larry Fitzgerald, Memphis, Tennessee (at trial), Robert Little and James Thomas, Memphis, Tennessee (at trial); and Michael Scholl, Memphis, Tennessee (on appeal), for the Appellee, Roderick Davis.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham and Ray Lepone, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

The victim, Lekisa Stevens, ended a five-month romantic relationship with the defendant in October 1998.  She testified that the defendant threatened "he would have somebody to cut [her] face up and cut [her] up."  At 6:00 on the morning of November 21, 1998, the defendant called and asked whether she was alone.  After hanging up, the victim, who had worked the previous night, went to bed.

She was awakened later by a loud noise and saw two men dressed in black in her apartment. The men began hitting and kicking the victim. Although the intruders wore masks, the victim recognized the voice of the defendant when he told her, "Bitch, I told you I don't play no games." He took a box cutter from the other intruder. As she was repeatedly struck by both men, the victim did not realize she was being cut. One of the men cut off her hair with the box cutter. During the affray, the defendant said to the other man, "Dee man, cut the bitch throat." Dee, who the victim knew to be Desmond Frazier, a friend and the co-defendant of the defendant, refused to cut the victim's throat.

The defendant then asked, "Where the m ----- f ------g money at?" The victim had earned approximately $600 dancing at the Pure Passion Club the two previous evenings, and she pointed to the mattress where she had hidden the cash. The defendant took $575, and Frazier left the apartment. As the defendant left, he threatened to kill the victim if she said anything.

The victim testified that she was barely conscious. She was unable to use the telephone to summon help because the men had cut the phone line. She collapsed after crawling out of her apartment. She awoke in the ambulance that took her to the hospital, where she received over 400 stitches to her arm, legs, neck, back, and head.

On cross-examination, the victim denied that she had been upset because the defendant had other girlfriends. She also denied seeing him with one of them on the morning of November 21, 1998, before she went home, or previously threatening to seek revenge against him for dating other women. She testified that she broke up with the defendant because she refused to "deal with a disrespectful man."

Corshundor Warren, the victim's next-door neighbor, testified that about 7:30 on the morning of November 21, 1998, he found the victim crawling outside her apartment. She was clad in a brassiere and panties and was covered in blood. She asked him to call her mother and did not mention the defendant or the other intruder. Prior to finding the victim, Mr. Warren had neither heard any loud noises nor seen anyone leaving the apartment.

The Memphis police officer who first arrived at the victim's apartment testified that her door and lock had been damaged. The victim had been cut, was bleeding, and was obviously upset and distraught. She said that her boyfriend and his friend had broken into her apartment and "jumped on" her. The officer found splatters of blood inside the apartment.

A second investigating officer testified that she found a foot print on the damaged apartment door. She introduced into evidence photographs she had taken which showed significant blood smears in the bedroom.

A third officer testified that, shortly after the attack, the victim was able to identify both the defendant and Mr. Frazier as the intruders from a photographic array.

Called by the defense, Kesha Morris testified that the victim had told Morris that she knew that the defendant had not assaulted her, but that the victim stated "vengeance is [mine]." Manika Phifer testified that she was present with Ms. Morris when the victim said, "I know Rod didn't do it, but he had somebody to do it and vengeance is mine."

The defendant testified that he and the victim broke up because they constantly argued about a woman named Shay. He testified that the victim called him on the morning of November 21, 1998, when he was at the Waffle House with Shay. He hung up on her, and she paged him. He called her back and told her they would talk another time. Otherwise, he denied calling the victim, assaulting her, or taking money from her.

Shevica Hardin testified that, about a month before the attack on the victim, the victim called her to express her anger over Hardin dating the defendant.

Based upon the foregoing evidence, the jury convicted the defendant of especially aggravated robbery and especially aggravated burglary.[1]

The trial court conducted a sentencing hearing and determined the defendant to be a standard offender. The trial court imposed consecutive sentences of 24 years for the especially aggravated robbery and eleven years for the especially aggravated burglary.

## I. Sufficiency of the Evidence.

First we address the defendant's challenge to the sufficiency of the evidence. He claims that, relative to the especially aggravated robbery, the state failed to prove that the defendant intended to deprive the victim of her property prior to assaulting her, and relative to the especially aggravated burglary, the state failed to prove that the victim sustained serious bodily injury as an element of the offense. He also claims that the serious bodily injury element precludes a conviction of especially aggravated burglary. Essentially, then, the defendant posits that the convictions should be respectively reduced to aggravated robbery and aggravated burglary.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not re-weigh the evidence but presume that the fact finder has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the

---

[1]The jury also convicted the defendant on counts of assault and aggravated assault growing out of the same incident, but the trial court merged the latter convictions into the conviction for especially aggravated robbery.

evidence was legally insufficient to sustain a guilty verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## (a) Especially Aggravated Robbery.

We agree with the state that it was unnecessary for the state to prove, as the defendant claims in his brief, "that [he] formed an intent to deprive the victim of her property prior to the alleged assault." Indeed, this court has previously held that "the intent to steal need not exist prior to or concurrently with the [infliction of serious bodily injury] in a case in which the defendant is charged with especially aggravated robbery." *State v. Wade P. Tucker*, No. M2001-02298-CCA-R3-CD, slip op. at 7-8 (Tenn. Crim. App., Nashville, Jul. 17, 2002), *perm. app. denied* (Tenn. 2002). The holding in *Wade P. Tucker* disposes of the defendant's claim that the evidence insufficiently supports especially aggravated robbery.

## (b) Especially Aggravated Burglary.

Next, we address the claim that the evidence does not support a verdict of especially aggravated burglary in the absence of proof of serious bodily injury. A person commits especially aggravated burglary who, without the effective consent of the property owner, enters a building and commits or attempts to commit a felony, theft, or assault, and the victim suffers serious bodily injury. *See* Tenn. Code Ann. § 39-14-404(a) (2003). Significantly, for purposes of the present case, "[a]cts which constitute an offense under [section 39-14-404] may be prosecuted under [section 39-14-404] or any other applicable section, but not both." *Id.* § 39-14-404(d) (2003). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty . . . ." *Id.* § 39-11-106(a)(2) (2003). "'Serious bodily injury' means bodily injury which involves (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty . . . ." *Id.* § 39-11-106(a)(34) (2003).

## (1)

The prong of the serious bodily injury definition targeted by the parties in the present case is that of extreme physical pain. We acknowledge, as the defendant argues, that bruises, knots on the head, bites, slight burns, and lacerations do not implicate the degree of extreme physical pain that would support a finding of serious bodily injury. *See, e.g., State v. Barnes*, 954 S.W.2d 760, 765 (Tenn. Crim. App. 1997). We believe that, in the present case, however, the victim's injuries resulted in serious bodily injury via extreme physical pain. The victim testified that one of the intruders "hit her in [her] face real, real hard." At first when she was being hit, she did not know she was being cut. The cuts to her arm, legs, head, neck, and back required over 400 stitches to close. She testified that some of them were so deep that they required suturing from both the inside and outside. She faded into unconsciousness and collapsed after crawling out of her apartment. She

stayed in the hospital a day and a half. The photographs depicted long cuts with wide closure lines. We hold that the evidence supports a finding of serious bodily injury via extreme physical pain.

That said, we also believe that the evidence warranted a finding of serious bodily injury via "[p]rotracted or obvious disfigurement." *See* Tenn. Code Ann. § 39-11-106(a)(34)(D) (2003). The photographs show prominent cuts, especially on the victim's leg. To be sure, the state offered no medical testimony that the cuts would result in permanent scarring or disfigurement, but the definition does not require that. It requires only *protracted or obvious* disfigurement. The disfigurement apparent in the photographs was not only obvious but provided a basis for the jury inferring that it would be protracted. We hold that the evidence satisfied the statutory element of especially aggravated burglary that the victim suffered serious bodily injury.

**(2)**

We turn now to the defendant's claim that the conviction of especially aggravated burglary was barred by the prohibition in Code section 39-14-404(d) that acts constituting especially aggravated burglary may be prosecuted as such or pursuant to "any other applicable section, but not both." *See id.* § 39-14-404(d) (2003). Although we believe the defendant miscasts this issue as one of sufficiency of the evidence, we discern that, with his section 39-14-404(d)-based argument, he nevertheless gains traction on appeal.

The terms of section 39-14-404(d) preclude convictions for both the especially aggravated robbery committed after entering the victim's apartment, one of the elements being serious bodily injury to the victim, and the especially aggravated burglary. *See State v. James Ruben Conyers,* No. M2002-01007-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Nashville, Sept. 5, 2003) ("In the instant case, the appellant was convicted of both especially aggravated burglary and especially aggravated robbery based, in part, upon the serious bodily injury suffered by [the victim]. Because section 39-14-404(d) prohibits the conviction for especially aggravated burglary, we recognize this as plain error and modify the appellant's conviction for especially aggravated burglary to aggravated burglary."), *perm. app. denied* (Tenn. 2004). As in *James Ruben Conyers*, we modify the defendant's especially aggravated burglary conviction to aggravated burglary. *See* Tenn. Code Ann. §39-14-403(a) (2003) (proscribing burglary of a habitation as aggravated burglary).

## II. Exclusion of Alibi Evidence.

In the defendant's next issue, he asserts that the trial court erred in prohibiting him from calling an alibi witness. Tennessee Rule of Criminal Procedure 12.1 provides in pertinent part:

> (a) Notice by Defendant. Upon written demand of the district attorney general stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney general a written notice of an intention to offer a defense of

alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

(b) Disclosure of Information and Witness. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the district attorney general shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

. . . .

(d) Failure to Comply. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his or her own behalf.

(e) Exceptions. For good cause shown, the court may grant an exception to any of the requirements of this rule.

Tenn. R. Crim. P. 12.1.

In the present case, the record on appeal contains no demand for notice of an alibi defense. Nevertheless, in March 2001, the defendant filed a "Notice of Alibi Witness," but the notice failed to "state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi." *Id.* The trial commenced on February 20, 2002. During the trial, counsel for the co-defendant, Mr. Frazier, apparently told the prosecutor that he planned to call Frazier's mother to testify that Frazier was with her at the time of the offense. So prompted, the prosecutor moved to exclude the proposed testimony after the state presented its case-in-chief. The prosecutor adverted to the state's "motion for notice of alibi defense" and told the court that the motion was filed on August 2, 2000. The co-defendant's counsel acknowledged that the motion, or demand, was filed.[2] The co-defendant Frazier's counsel argued that the failure to disclose the

_____

[2] The transcript of the colloquy among the prosecutor, defense counsel, and the trial judge reveals that the judge examined the state's written demand and commented that it was filed on August 2, 2000. Despite the absence of a written

(continued...)

specifics of an alibi defense was not willful and that he had learned of the alibi witness just before trial. Counsel for the defendant, Roderick Davis, did not participate in the colloquy. The trial court acknowledged that "both defendants may testify as to their whereabouts" but granted the state's motion to exclude the alibi witness.

In our view, the defendant has established no claim on appeal that an alibi witness was erroneously excluded. In the first place, no one claimed that the putative witness had any knowledge of the defendant's whereabouts at the time of the offense; therefore, it can hardly be claimed that the defendant tried to present a defense of *his* alibi.

Furthermore, even if it could be argued that Frazier's role in the offense was so closely linked to that of the defendant that Frazier's alibi was critical to Davis' defense, neither defendant filed a notice that complied with Rule 12.1(a). In this event, the trial court had discretion to exclude the proposed witness. *See* Tenn. R. Crim. P. 12.1(d); *see also State v. Joy A. Stinson*, No. E1999-02082-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, Sept. 29, 2000) (decision to exclude witness pursuant to Rule 12.1 lies in discretion of trial court and on appeal is reviewable for abuse of discretion), *perm. app. denied* (Tenn. 2001). Even if defendant Davis has "standing" to raise the exclusion issue, the record evinces no abuse of discretion.

Finally, again assuming *arguendo* that defendant Davis may otherwise lay a claim now to an alibi defense, the claim would be waived. The defendant failed to make any proffer of the excluded evidence. *See* Tenn. R. Evid. 103(a)(2). Furthermore, after the trial judge heard arguments from the prosecutor and Frazier's counsel, he asked the defendant's counsel if he had any comment, and counsel declined to argue, object, or comment. Under the circumstances, the defendant failed to avail the trial court the opportunity to rule upon the alibi claim now being presented on appeal, and as such, he has waived the claim for this reason as well. *See* Tenn. R. App. P. 36(a) ("[R]elief may not be granted in contravention of the province of the trier of fact.").

For the foregoing reasons, we hold that the defendant has failed to demonstrate on appeal that the trial court erred in excluding a proposed alibi witness.

### III. Jury Instrucions.

In his next issue, the defendant claims that the trial court erred in referring to the defendants jointly, as opposed to individually, in the jury instructions. For instance, he points to the trial court's instructional statement that "[i]f you [the jury] do find the *defendants* guilty, you may convict *them* on only one of the above named offenses . . . ." (Emphasis added.)

---

[2](...continued)
demand in the appellate record, we conclude that the record as a whole, including defense counsel's concession, supports the existence of a statutorily compliant demand.

We agree that a defendant in a criminal case has a right to a correct and complete charge of the law applicable to the facts of the case. *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). In the present case, however, the defendant does not claim that the instructions were inaccurate or incomplete; he essentially posits that they were misleading or confusing. Against that claim, we notice that the trial judge gave the following instructions to the jury:

> You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which [are] applicable to that particular defendant. You should not consider any evidence, which was limited to a particular defendant, as to any other defendant. You can acquit both or convict both, or you can acquit one and convict the other. If you cannot agree upon a verdict as to both the defendants, but do agree upon a verdict as to one of them, you must render a verdict as to the one upon [whom] you agree.

The jury is presumed to have heeded this instruction. *See State v. Hall*, 976 S.W.2d 121, 148 (Tenn. 1998). Even if the trial court erred in referring to the defendants jointly in various portions of the instructions, we cannot fathom how the error had any prejudicial effect on the result at trial. *See* Tenn. R. App. P. 36(b).

## IV. Cumulative Error.

Before addressing the defendant's final issue of sentencing error, we acknowledge his claim that cumulative trial error compels the reversal of his convictions. We did discern error in the imposition of a conviction of especially aggravated burglary, and above we articulated the proper response to such error - - that of reducing the conviction to one of aggravated burglary. Even if we were inclined to characterize the trial court's use of joint references to both men on trial in its jury instructions as error, we deemed the error in and of itself to be harmless beyond a reasonable doubt, and we found no other error present in the proceedings. Thus, there are no *errors* to be deemed cumulative.

## V. Sentencing.

As to sentencing, the defendant disputes the application of enhancement factors that he had a previous history of criminal convictions or behavior, that the victim's injuries were particularly great, and that he had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Additionally, the defendant claims that the order of consecutive sentencing is infirm. The state agrees that the trial court should not have enhanced the sentences based upon the magnitude of the victim's injuries, that being implicit in the element of serious bodily injury.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the

determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). "The burden of showing that the sentence is improper is upon the appellant." *Ashby*, 823 S.W.2d at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989. At the conclusion of the sentencing hearing, the trial court determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b) (2003); 40-35-103(5) (2003); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In the present case, the trial judge made appropriate reference to the principles of sentencing and expressed specific findings of fact. We, therefore, accord to his judgment the presumption of correctness.

### (a) Length of Sentence.

The court applied enhancement factors (2) the defendant has a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the range, (3) he was a leader in committing an offense involving two or more offenders, (7) the personal injuries inflicted upon the victim were particularly great, (9) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, (14) the felonies were committed while the defendant was on bail for another felony, and (21) the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. *See* Tenn. Code Ann. § 40-35-114(2), (3), (7), (9), (14), (21) (2003). The trial court applied as a mitigating factor that, at the sentencing hearing, the defendant expressed remorse. *See id.* § 40-35-113(13) (2003).

As to factor (2), previous criminal history or behavior, the record on appeal shows that, as an adult, the defendant's prior convictions consisted only of disregarding a stop sign and violating the driver's license law. As such, his record as an adult was scant and deserving of very slight weight. On the other hand, the trial court also utilized factor (21), that the defendant, when

a juvenile, was adjudicated to have committed a delinquent act that would constitute a felony if committed by an adult. *See id*. § 40-35-114(21) (2003). As a juvenile, the defendant had been adjudicated guilty of theft of property valued in excess of $500. Thus, the utility of factor (21) in the defendant's case supplies some weight to the issue of prior offending conduct that factor (2) alone would not justify. In summary, the trial court had a basis for applying both factors. Slight weight should have been accorded to factor (2) and moderate weight to factor (21).

We agree with the parties that the trial court should not have applied factor (7), that the victim's injuries were particularly great. The court may not enhance a sentence via a factor that is itself an essential element of the offense as charged in the indictment. *Id*. § 40-35-114 (2003). Tennessee's statutory conditions of serious bodily injury satisfy the definition of a particularly great injury. *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994). The trial court should not have applied this factor.

The defendant claims that the trial court should not have enhanced the sentences based upon factor (9), that the defendant had a *previous* history of unwillingness to comply with the conditions of a sentence involving release in the community. He correctly points out that this factor is not applicable on the basis of the defendant committing the offense for which he is being sentenced while on release status from another offense. *See, e.g., State v. James M. Coggins, Jr.*, No. 01C01-9310-CR-00360, slip op. at 15 n.4 (Tenn. Crim. App., Nashville, Jul. 28, 1994). However, the record shows that on at least two previous occasions, the defendant's juvenile probation was revoked. *See State v. Jackson*, 60 S.W.3d 738, 740 (Tenn. 2001) (juvenile probation violations may serve as history of unwillingness to comply with conditions for release into the community). We hold that this fact supports the use of factor (9).

Even though enhancement factor (7) should not have been applied, we acknowledge that the trial judge ascribed little weight to that factor. All in all, the trial court's methodical approach to sentencing the defendant bespeaks a considered weighing of enhancement factors and a mitigating factor, and despite the misapplication of one enhancement factor, we would be loath to interfere with the trial court's determination were it not for the impact of *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004).

In *Blakely*, the United States Supreme Court held that Blakely's constitutional rights to a jury trial were violated when the trial judge, based upon facts he found without the aid of a jury, imposed a sentence in excess of the "maximum" he could have otherwise imposed under state law "without the challenged factual finding." *Id.* at ___, 124 S. Ct. at 2536-38. The "maximum" sentence for purposes of *Blakely* "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at ___, 124 S. Ct. at 2537 (emphasis in original). The statutory maximum the court may impose is the maximum "he may impose *without* any additional finding." *Id.*, 124 S. Ct. at 2537 (emphasis in original). "When a judge inflicts punishment that the jury's verdict [or guilty plea] alone does not allow, [a] jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Id.*, 124 S. Ct. at 2537 (citation omitted).

The single exception to the this rule is that state law may authorize a trial judge to increase a sentence beyond the minimum based upon "the fact of a prior conviction." *Id.* at ___, 124 S. Ct. at 2536; *see Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362 (2000).

Apparently, *Blakely* signals certain infirmities in Tennessee's sentencing scheme. One such infirmity is the procedure for determining the length of the defendant's sentence. Tennessee Code Annotated section 40-35-210(c) establishes presumptive sentences. *See* Tenn. Code Ann. § 40-35-210(c) (2003). When there are no enhancement or mitigating factors, the presumptive sentence for a Class A felony shall be the midpoint of the range, and the presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range. *Id.* The trial court may impose a sentence in excess of the presumptive sentence only when it finds the existence of one or more enhancement factors enumerated in Code section 40-35-114. *Id.* § 40-35-210(d), (e) (2003). Thus, the court may not increase the sentence above the presumptive or "maximum" without additional findings of fact.

In the present case, the trial court increased the sentence for especially aggravated robbery, a Class A felony, *see* Tenn. Code Ann. § 39-13-304(b) (2003), from the presumptive sentence of 20 years to a sentence of 24 years, and it increased the sentence for especially aggravated burglary, *id.* § 39-14-404(c) (2003), from the presumptive sentence of eight years to a sentence of eleven years, *see id.* § 40-35-112(a)(1), (2) (2003) (establishing sentencing ranges for Class A and Class B felonies, respectively). In so doing, it relied upon factual findings in addition to a record of prior convictions or adjudications to enhance the defendant's sentences. Pursuant to *Apprendi* and *Blakely*, this was error. We impose a sentence of 20 years for especially aggravated robbery and the presumptive sentence of three years for the conviction herein modified to aggravated burglary. *See id.* §§ 39-14-403(b) (2003) (establishing aggravated burglary as a Class C offense), 40-35-112(a)(2) (2003) (establishing Range I, Class C offense range of three to six years).

### (b) Consecutive Sentencing.

After imposing sentences of 24 years and eleven years, the trial court ordered that they be served consecutively, based upon its finding that the defendant was a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. *See id.* § 40-35-113(a)(4) (2003). The defendant now argues that the trial court made insufficient findings to support consecutive sentencing.

Tennessee Code Annotated section 40-35-115 establishes criteria for ordering consecutive, instead of concurrent, sentencing. Tenn. Code Ann. § 40-35-115(a) (2003). One statutory basis upon which consecutive sentencing may be imposed -- the one utilized by the trial court in the present case - - is that the defendant "is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *Id.* § 40-35-115(b)(4) (2003). To support consecutive sentencing of a "dangerous" offender, the evidence must demonstrate that the "terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further

criminal acts by the offender." *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995), *limited by State v. Lane*, 3 S.W.3d 456 (Tenn. 1999). Essentially, the defendant claims that the trial judge failed to support his dangerous-offender finding when he neglected to make the *Wilkerson* findings.

We disagree. The brutality and savagery of the attack upon the victim bespeak the level of dangerous offending that is the target of Code section 40-35-115(b)(4) and *Wilkerson*. The record supports the trial court's use of the factor to impose consecutive sentences.

That said, we must now determine whether *Blakely* affects Tennessee's procedure for imposing consecutive sentences. As noted above, *Blakely* speaks in terms of the right to jury trial being implicated when the government inflicts *punishment*, a general concept that is broader than the specific activity of determining the length of a sentence. Indeed, the High Court said, "[E]very defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to *the punishment*." *Blakely*, 542 U.S. at ___, 124 S. Ct. at 2543 (first emphasis in original; second emphasis added). Clearly, an effective sentence of 35 years is more severe punishment than is an effective sentence of 24 years. Thus, we consider whether the determination to arrange sentences consecutively is a function of punishment that *Blakely* addresses.

In Tennessee's procedure, concurrent sentencing is the baseline or presumptive arrangement of multiple sentences: "Sentences shall be ordered to run concurrently, if the criteria noted in [section 40-35-115](b) are not met, unless consecutive sentences are specifically required by statute or the Tennessee Rules of Criminal Procedure." Tenn. Code Ann. § 40-35-115(d) (2003); *see also* Tenn. R. Crim. P. 32(c)(1) ("Unless it is made to affirmatively appear that the sentences are consecutive, they shall be deemed to be concurrent."). Thus, as in the case of the enhancement of the length of individual sentences, the trial judge must make a finding of one or more of the factual criteria enumerated in Code section 40-35-115 as a basis for ordering the consecutive service of multiple sentences.

Having thus discerned a potential conflict between *Blakely* and Tennessee's scheme for imposing consecutive sentences and having solicited the parties' supplemental briefs on the issue, we nevertheless believe that *Apprendi* and *Blakely* establish that the right to jury trial as embodied in the Sixth Amendment applies merely to the findings necessary to establish a defendant's guilt of a specific offense. For instance, the High Court adopted for purposes of state application the language of *Jones v. United States*, 526 U.S. 227, 243, 119 S. Ct. 1215 (1999), a federal prosecution: "[U]nder the Due Process Clause of the Fifth Amendment and the . . . jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum *penalty for a crime* must be . . . submitted to a jury . . . ." *Apprendi*, 530 U.S. at 476, 120 S. Ct. at 2355 (emphasis added). Additionally, the Court said, "Taken together, [the due process and jury trial rights] indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty *of every element of the crime with which he is charged*, beyond a reasonable doubt.'" *Id.* at 477, 120 S. Ct. at 2355-56 (emphasis added); *see People v. Sykes*, 120 Cal. App. 4th 1331, 16 Cal. Rptr. 3d 317, 327 (Cal. App. 2 Dist. 2004). We believe these references to the findings necessary to establish the required *elements* for individual *offenses*, including factors for extraordinary sentencing, articulate that the

due process and jury trial guarantees have no application to a judge's consecutive sentencing determination. As such, we believe these references reflect a time-honored view that, once convictions and the lengths of individual sentences are properly determined, the judge is the arbiter of whether the sentences shall run concurrently or consecutively.

Accordingly, we hold that the *Apprendi-Blakely* rule does not apply to the trial court's imposition of consecutive sentences.

## VI. Conclusion.

We affirm the defendant's conviction of especially aggravated robbery but modify his especially aggravated burglary conviction to one of aggravated burglary. We modify the sentences to 20 years and three years, respectively, and affirm the imposition of consecutive sentences. The end result is an effective sentence of 23 years.

_____
JAMES CURWOOD WITT, JR., JUDGE