**STATE of Tennessee, Appellee,**

v.

**Gail Haneline BARNES, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 28, 1997.

No Permission to Appeal Applied for to the Supreme Court.

Christine Zellar Church, Clarksville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Christina S. Shevalier, Assistant Attorney General, Criminal Justice Division, Nashville, Dan Mitchum Alsobrooks, District Attorney General, Robert S. Wilson, Asst. District Attorney General, Charlotte, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Gail Haneline Barnes,[1] was found guilty by the Dickson County Circuit Court of aggravated assault, a class C felony. She was sentenced, as a range I offender, to serve five years in the Department of Cor-

---

1. Consistent with the practice of this court, we conform to the style of the appellant's name as reflected in the charging instrument. However, we note that the record indicates that the appellant retained her maiden name, Barnes, after her marriage to Michael Haneline. Thus, we conclude that the instrument incorrectly interposed her maiden and married names.

rection. The appellant now appeals her conviction, raising the following issues:

(1) Whether the indictment sufficiently placed her on notice that she would be liable for the acts of Stanley Harris, under the theory of criminal responsibility for the conduct of another;

(2) Whether the evidence is sufficient to sustain a conviction for aggravated assault;

(3) Whether the court imposed an excessive sentence; and

(4) Whether the court erred in denying an alternative sentence.

After a careful review of the record on appeal, we conclude that, for reasons contained herein, the appellant's conviction for aggravated assault must be modified and reduced to assault. Accordingly, we remand the case to the trial court for the purpose of re-sentencing the appellant as a class A misdemeanant.

## I. Background

In December 1993, the appellant and the victim, Michael Haneline, were married, but were in the process of obtaining a divorce. They were parents to a twenty month old daughter. Following the couple's separation, the parties agreed that Haneline would remain in the marital home in Dickson County, while the appellant was to reside with her parents in Cheatham County. The couple also agreed that the appellant would retain custody of the child, pending determination of this issue by the appropriate court. In order to allow Haneline to see the child and against the advice of her attorney, the appellant devised a system whereby Haneline would sign a paper promising to return the child to her at a designated time.

During the Christmas holiday and pursuant to the parties' agreement, Haneline had custody of the child. On the date that Haneline was to return the child, the parties met in Ashland City. However, Haneline refused to relinquish the child and locked his car doors, preventing the appellant from removing her from the car. While the appellant pleaded with Haneline to return the child, he struck her with his car.[2] Concerned for the welfare of her young child, the appellant anxiously attempted to contact her attorney. Her attempts proved futile as her attorney was out of town for the holidays. She tried to contact Haneline's attorney, but he refused to speak with her. She talked with Cheatham County General Sessions Judge, Phillip Maxie, but he told her there was nothing he could do.

Despite Haneline's breach of the parties' custodial arrangements, he permitted the appellant to visit their child at his home. During these visits, the appellant would become emotional stating that Haneline had stolen her child. On the evening of December 30, the appellant and her nine year old daughter visited the child at the parties' home where Haneline was residing. They left at approximately 9:30 p.m. Later that evening, the appellant, her nine year old daughter, and Stanley Harris, a friend, returned. Relying upon the ruse that she had lost her watch during the first visit, the appellant re-entered the house with the intent to regain physical custody of her minor child. While walking down the hallway, the appellant began hitting Haneline upon his head and back with a stick she had concealed behind her back.[3] This attack resulted in a substantial struggle between the two.

At this point, Haneline attempted to place a telephone call to his father for assistance. The appellant then grabbed a lamp and burned Haneline's nose with the lighted bulb. Haneline pinned the appellant to the floor, continuing his effort to telephone his father. The appellant, still pinned to the floor, bit Haneline's arm. Throughout the struggle, the appellant was calling for help. Harris,

---

**2.** Haneline subsequently pled *nolo contendere* to the assault charge arising from this incident and received a suspended sentence of eleven months and twenty-nine days.

**3.** In a statement to a Dickson County Sheriff's Department deputy, she related:

> I did not want to really hurt him. I was going to knock him out .... and I was going to tie him up with this rope.... I wasn't gonna [sic] even gonna [sic] knock him out if I didn't have to. If the one good blow hurt him to where he would just be still, I was just gonna [sic] tie him up and take my baby. And that's all I wanted, was just my child.

who had been waiting outside the house, heard the appellant's cries and entered the house armed with a baseball bat. Harris struck Haneline in the head with the bat. The blow stunned Haneline freeing the appellant, who had remained pinned to the floor. Haneline then grabbed a loaded .35 caliber lever action Marlin rifle from the corner of the bedroom. Haneline testified that he saw Harris " ... raising the bat up and stepping to me and swinging down with the bat, and that's whenever I shot him." The gunshot wound to Stanley Harris proved to be fatal.

As a result of this incident, Haneline received a bite wound to his arm, a burned nose, bruises on his back and head from the stick, and a cut on the front of his head from the baseball bat. Subsequently, the Dickson County Grand Jury indicted the appellant for the offense of aggravated assault. The indictment, in pertinent part, reads:

> ... That GAIL HANELINE BARNES, ... on or about the 30th day of December 1993 ... did unlawfully, intentionally, knowingly, recklessly and feloniously cause serious bodily injury to Michael Haneline, in violation of Tenn.Code Ann. § 39–13–102....

## II. Sufficiency of the Indictment

◼ In her first issue, the appellant contends that her due process rights were violated because the indictment failed to provide notice that she was being tried for Stanley Harris' conduct. "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V (1791); see also TENN. CONST. Art. I, Sec. 14 (1870). The three primary functions of an indictment are (1) to inform the defendant of the substantive offense charged; (2) to enable a trial court upon conviction to enter an appropriate judgment and sentence; and (3) to protect the defendant against double jeopardy. State v. Trusty, 919 S.W.2d 305, 309 (Tenn.1996). Inherent within these functions

is the due process guarantee that the indictment provide the accused a fair opportunity to defend against the charges. Id. See also State v. Marshall, 870 S.W.2d 532, 537 (Tenn. Crim.App.1993) (an indictment must sufficiently apprise the defendant of what he must be prepared to meet).

Again, the appellant contends that the indictment was insufficient because it failed to notify her that she would have to defend, not only her actions against Michael Haneline, but also those of Stanley Harris. The appellant, in support of her argument, points out that the indictment contained no reference to her criminal responsibility based upon the conduct of Harris.[4] At trial, "the court repeatedly held that she was being tried for the injuries the victim received from Stanley Harris, as well as any injuries he received from her directly." Moreover, the record sufficiently demonstrates that the appellant's conviction for aggravated assault was based upon both the appellant's conduct and the conduct of Stanley Harris. The State concedes that the case law is unclear on this issue, however, it argues that it is unnecessary to reach this issue "because the criminal acts of the defendant acting alone were sufficient to convict her of aggravated assault beyond a reasonable doubt."

◼ The common law distinction between accessories before the fact, aiders and abettors, and principles was abolished upon adoption of the 1989 Criminal Code. Prior to the 1989 Code, statutory law provided that aiders and abettors were "deemed to be principle offenders and punished as such." Tenn.Code Ann. 39–1–303 (1982) [repealed]. Accordingly, a defendant could be convicted as an aider and abettor under an indictment which charged the defendant as the principle criminal actor. See State v. Hensley, 656 S.W.2d 410, 413 (Tenn.Crim.App.1983). Absent this statutory authority, under the new criminal code, case law continues to adhere to the general principle that "[t]he theory by which the state seeks to hold the defendant responsible for the criminal act is not a necessary

---

4. Interestingly, the appellant suggests that sufficient notice to establish criminal responsibility would have been provided had the indictment charged her with aggravated assault by the use of a deadly weapon, i.e., the baseball bat. Tenn. Code Ann. § 39–13–102(a)(1)(B). We agree. See infra.

inclusion in the indictment." *State v. Clay,* No. 01C01–9301–CC00013, 1993 WL 379991 (Tenn.Crim.App. at Nashville, Sept. 24, 1993) (citation omitted); *see also State v. Johnson,* 910 S.W.2d 897, 900 (Tenn.Crim.App.1995).

Tenn.Code Ann. § 39–11–401(a) (1991) provides that: "A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Current law now specifies three instances in which one is legally accountable for the conduct of another.[5] Tenn.Code Ann. § 39–11–402 (1991).

■ In the prosecution of a case based upon a theory of criminal responsibility for the conduct of another, the essential elements of the charged substantive offense are generally proven by evidence relating to the conduct of the principal criminal actor and *not* the conduct of the "aider." The "aider's" conduct becomes relevant in the application of the criminal responsibility statute, i.e., did the accused aid with the intent to promote or assist in the commission of "the offense." However, because *only* the principal's criminal conduct establishes "the [substantive] offense," an indictment is constitutionally sufficient if the "aider" is charged as a principal, even though the State's theory of criminal responsibility is not set forth therein. In this situation, the "aider" may not be heard to complain of prejudice from insufficient

notice as the alleged criminal conduct constitutes but a single offense.

■ The case before us, however, presents a different factual situation. In the instant case, the proof arguably presents two separate offenses committed by two separate criminal actors. In other words, probable cause existed to charge both Harris and the appellant with separate offenses based upon their separate conduct. Excluding the "principal's" conduct from the "aider's" conduct would not extinguish all criminal activity. Accordingly, in this case, charging one count of aggravated assault did not provide adequate notice of which aggravated assault the appellant was being called to defend against.

It is fundamental that one cannot be accused of one crime and convicted of another. "It is not the policy of the law to compel persons charged with a crime to enter upon their defense without knowledge of the character of proof which they will be compelled to meet." *State v. Frazier,* 76 Wash.2d 373, 456 P.2d 352, 354 (1969) (quoting *State v. Gifford,* 19 Wash. 464, 53 P. 709 (1898)). Thus, in the instant case, sufficient notice of criminal liability based upon the conduct of another could have been satisfied (1) by alleging language which imposed criminal responsibility for the conduct of another; (2) by charging both (Harris and the appellant) as co-defendants in the commission of aggravated assault; or (3) by alleging facts sufficient to place the appellant on notice that the charge encompassed the conduct of both.[6]

---

**5.** Tenn.Code Ann. § 39–11–402 provides three theories of criminal responsibility for the conduct of another. The first theory is responsibility "for the use of an innocent or irresponsible person to commit an offense." *See* Sentencing Commission Comments, Tenn.Code Ann. § 39–11–402. "This section is based upon the universally acknowledged principle that one is no less guilty of the commission of a crime because he uses the overt conduct of an innocent or irresponsible agent." Comments, model penal code, Section 2.06. An example would include employing a child to commit an offense.

The second and third instances occur when one is an accomplice of another in the commission of an offense. The second theory "sets forth the conduct of defendants formerly known as accessories before the fact and aiders and abettors." Sentencing Commission Comments, Tenn.Code Ann. § 39–11–402. The third section imposes criminal liability "upon offenders who

neglect their duty with intent to benefit from, promote, or assist in the commission of an offense." *Id.* Examples would include the store clerk who permits removal of merchandise from the store in order to share in the proceeds; the policeman or security guard who purposefully closes his eyes to a robbery or burglary and, therefore, fails to make a reasonable effort to prevent the commission of the offense.

**6.** We note that at least one jurisdiction has held that, in a prosecution based upon a theory of criminal responsibility, the indictment should specifically allege that the defendant aided and abetted and should provide additional information as to the specific acts constituting the means of aiding and abetting. *See Barren v. State,* 99 Nev. 661, 669 P.2d 725 (1983). Moreover, similar to our holding that under specific factual situations the defendant must be provided notice of the State's intent to rely upon the theory of

Accordingly, we hold, under the specific facts of this case, that the indictment failed to provide adequate notice to the appellant that she would be required to defend the conduct of Stanley Harris. Thus, our review of the sufficiency of the evidence to support a conviction for aggravated assault proceeds based solely upon the conduct of the appellant.

### III. Sufficiency of Evidence

■ Next, the appellant contends that the evidence is insufficient to support her conviction for aggravated assault because the proof at trial failed to establish that the victim sustained "serious bodily injury." The injuries inflicted by the appellant during the assault are not disputed. They include several knots on the back of the head and bruises on the back caused by the "stick," a burn on the victim's nose from a light bulb, and a single bite on the arm.[7] "Serious bodily injury" is defined as bodily injury which involves:

(A) A substantial risk of death;

(B) Protracted unconsciousness;

(C) Extreme physical pain;

(D) Protracted or obvious disfigurement; or

(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty.

criminal responsibility, other jurisdictions, with language similar to Tenn.Code Ann. § 39–11–402, have held that failure to specifically provide notice in the indictment of the State's reliance upon the theory of criminal responsibility violates due process. *See Michael v. State*, 805 P.2d 371 (Alaska 1991) (Defendant indicted as principal for assault of thirteen year old daughter. Proof showed liability as an accomplice and liability due to breach of duty as parent to child. Defendant convicted on theory of breach of parental duty. Court held fatal variance between crime alleged in indictment and conviction.); *see also Swope v. State*, 805 S.W.2d 442 (Tex.Crim. App.1991) (Miller, J. dissenting). Additionally, we acknowledge Judge Tipton's concurring opinion in *State v. Bowen*, No. 01C01–9303–CC–00076, 1994 WL 102056 (Tenn.Crim.App. at Nashville, Mar. 30, 1994), noting the various theories of criminal responsibility, *see supra* footnote 3, and suggesting the inadequacy of a generic notice in an indictment which fails to apprise the defendant as to which theory of criminal responsibility he will be forced to defend against at trial.

Tenn.Code Ann. § 39–11–106(a)(33). In contrast, "bodily injury," an element of the misdemeanor offense of assault, includes "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ or mental faculty." Tenn.Code Ann. 39–13–101(a)(1). Tenn.Code Ann. § 39–11–106(a)(2).

■ The State acknowledges "that the only subsection of the definition for serious bodily injury [applicable] in this case is subsection (D), i.e. protracted *or* obvious disfigurement." This definition is met, the State argues, by the "protracted disfigurement" resulting from the bite wound on the victim's arm.[8] Proof of the victim's injuries was established solely by the testimony of the victim. Although the victim testified that he had a scar from the bite mark, no further description of the scar was developed for the record.[9] Thus, if we accept the State's position, every disfigurement would equate to "protracted disfigurement." While the phrase "serious bodily injury," an essential element of the offense of aggravated assault, is not susceptible to precise legal definition, it must describe an injury of a greater and more serious character than that involved in a simple assault. The distinction between "bodily injury" and "serious bodily injury" is

7. Although the "stick" was never recovered, the victim testified that the weapon was "around eighteen inches long and probably three-quarters of an inch around" and similar in size to a broom handle.

8. The State, on appeal, also makes passing reference to a scar on the victim's head. We find no proof in the record of a scar on the victim's head. Moreover, *assuming this alleged injury was occasioned by Harris' assault upon the victim with the baseball bat, we have previously held that the conduct of Harris may not be imputed to the appellant.*

9.
STATE: Is that what you are talking about, she took a plug out of your arm?
VICTIM: Yes, right there. That's the scar there.
STATE: So, do you have a scar?
VICTIM: Yes.
STATE: Let the record reflect that he's pointing to a scar on his arm.

generally a question of fact for the jury and not one of law.

We find no decisions determining whether such a bite mark constitutes "serious bodily injury." We note, however, in *State v. Givens*, No. 01C01–9307–CR–0023, 1994 WL 406187 (Tenn.Crim.App. at Nashville, Aug. 4, 1994), this court implied that injuries which included minor lacerations about the head, bite marks, and minor lacerations on the victim's right upper arm and shoulder did not rise to a level of "serious bodily injury."

After reviewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could not have found beyond a reasonable doubt that the bite wound to the victim's arm constituted "serious bodily injury." We conclude that, based on the nature and extent of the bite wound, the injury more properly falls within the definition of "bodily injury," which includes "a cut, abrasion ... or disfigurement." Accordingly, the appellant's conviction for aggravated assault must be reversed.

## IV. CONCLUSION

For the reasons set forth above, we reverse the appellant's conviction for aggravated assault and modify the judgment of the trial court to reflect her conviction for assault, a class A misdemeanor. Tenn.Code Ann. § 39–13–101(a)(1). Furthermore, we find it unnecessary to address the remaining issues regarding sentencing as they are rendered moot by our holding in this case. Accordingly, we remand this cause to the trial court for entry of a judgment of conviction in accordance with this opinion and for re-sentencing consistent with the principles of sentencing.

SMITH, J., and WILLIAM S. RUSSELL, Special Judge, concur.