IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 5, 2007

## STATE OF TENNESSEE v. ELDRIDGE HILL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-06183    Carolyn Wade Blackett, Judge**

_____

**No. W2006-01942-CCA-R3-CD  - Filed June 26, 2007**

_____

The defendant, Eldridge Hill, was convicted by a Shelby County jury of especially aggravated robbery, a Class A felony, and sentenced by the trial court as a violent offender to sixteen years at 100% in the Department of Correction.   The sole issue he raises on appeal is whether the evidence was sufficient to sustain his conviction.  Specifically, he argues that the State failed to prove beyond a reasonable doubt that his robbery victim suffered a serious bodily injury.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

C. Anne Tipton (on appeal) and Dewun R. Settle (at trial), Memphis, Tennessee, for the appellant, Eldridge Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook and Lora Fowler, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On September 2, 2004, the Shelby County Grand Jury returned an indictment charging the defendant with the especially aggravated robbery of Marcus Brown and the aggravated robberies of

Mark Taylor and Felicitas Spurlock-Fitzpatrick.[1]  At the conclusion of his jury trial, he was convicted of the especially aggravated robbery count of the indictment and acquitted of the two aggravated robbery counts.  Because the defendant confines his argument on appeal to the sufficiency of the evidence as it relates to the severity of the victim's injury, we will only briefly summarize the proof the State presented of the crime itself.

On the afternoon of April 28, 2004, Brown, Taylor, and Fitzpatrick were watching television in the living room of Fitzpatrick's Memphis home when the defendant, who was known to all of them as "Big Red," pulled up to the house in a car driven by another man.  The defendant came to the porch and asked Fitzpatrick if "Bumblebee," or Brown, was inside.  She replied yes and admitted the defendant into the house.  The defendant closed the door behind him, pulled out a gun, and ordered everyone to stay seated on the couch.  He then demanded that they tell him where the money and ten pounds of marijuana were located.  The three disavowed any knowledge of marijuana, and the defendant struck Taylor in the face with his hand and Brown in the head with his gun.  He then picked up a pillow from the couch, held it between the barrel of his gun and Brown's head, and threatened to shoot Brown if the three did not reveal the location of the marijuana.

The defendant took $860 in cash from Brown's pocket and cell phones and car keys from Taylor and Fitzpatrick.  He then went to the front door of the home and beckoned for the driver of his vehicle, whom the three victims knew only as "Big Daddy," to come inside.  Big Daddy came in, and the defendant instructed him to get his brother and to watch the door.  The defendant's brother, Carl Hill, entered the house, and the defendant sent him out to get another gun.  At some point, the defendant also gave the victims' car keys to either Big Daddy or Carl Hill with instructions to search the victims' vehicles.  When Big Daddy and Carl Hill were gone, the defendant pulled Fitzpatrick into the kitchen of the residence.  Seizing his chance, Brown fled out the door and down a hill, followed by the defendant who shouted, "Shoot him" as he ran out the door after Brown.

Hearing gunshots behind him, Brown turned around, saw the defendant standing on the hill shooting at him, turned back around to continue his flight, was struck in the back by a bullet, fell to the ground, got up, ran to a neighbor's house, and collapsed on the front porch.  From there, he was taken by ambulance to the hospital, where he underwent surgery.  Brown testified that the bullet hit his kidney and stomach and caused him pain and breathing problems.  In addition, it "messed [his] bowels up," causing him to "have trouble using the restroom."  Brown stated that he continued to experience problems with his bowels and had to take "stool pills" to help his elimination.  At the request of the State, he raised his shirt to show the jury his surgical scar.  He stated that the bullet was unable to be removed and remained in his body.  At a later point in the trial, two photographs of the victim's torso, which the parties stipulated showed the surgical scar, were admitted into evidence.

---

[1]This victim is named as "Felicitas Spurlock-Fitzpatrick" in the indictment but is referred to as "Felicitas Fitzpatrick" throughout the trial transcript.  For simplicity's sake, we will likewise refer to her as Fitzpatrick.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the evidence was sufficient to sustain his conviction for especially aggravated robbery. Specifically, he argues that Brown's lay testimony about his injury was not sufficient to establish that he suffered a serious bodily injury as defined by the statute. The State argues that the evidence was sufficient for the jury to find beyond a reasonable doubt that Brown's gunshot wound involved a substantial risk of death, protracted or obvious disfigurement, and a protracted loss or substantial impairment of a function of a bodily organ, and, thus, constituted a serious bodily injury.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Especially aggravated robbery is "robbery as defined in § 39-13-401: (1) [a]ccomplished with a deadly weapon; and (2) [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403(a) (2003). "Serious bodily injury" is defined in the code as a bodily injury that involves:

(A) A substantial risk of death;

(B) Protracted unconsciousness;

(C) Extreme physical pain;

(D) Protracted or obvious disfigurement; or

(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty.

Tenn. Code Ann. § 39-11-106(a)(34) (2003).

The defendant argues that Brown's lay testimony was insufficient to establish beyond a reasonable doubt that his injury involved a substantial risk of death, extreme physical pain, or protracted loss or substantial impairment of a function of a bodily organ. The defendant further contends that Brown's surgical scar did not involve the type of protracted disfigurement contemplated by the statute. We respectfully disagree.

The distinction between bodily injury and serious bodily injury is generally a question of fact for the jury to determine. See State v. Barnes, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997). Brown testified that the bullet struck his kidney and stomach, causing him pain, difficulty breathing, and problems with his bowels. He said that the injury required surgery and a subsequent two-week hospitalization. This court has previously noted that "a gunshot wound to the upper torso of the body, almost without fail, constitutes a substantial risk of death given the number of vital organs in that region of the body." State v. Clay B. Sullivan, No. M2004-03068-CCA-R3-CD, 2006 WL 644021, at *8 (Tenn. Crim. App. Mar. 10, 2006). Thus, we conclude that the evidence was sufficient for the jury to find that Brown's gunshot wound to the kidney and stomach involved a substantial risk of death.

We further conclude that the evidence was also sufficient for the jury to find that the injury involved protracted loss or substantial impairment of a function of a bodily organ and a protracted or obvious disfigurement. Brown testified that he continued to experience ongoing problems with his bowels and difficulty going to the bathroom, for which he has to take medication. In addition, the photograph of his torso reveals that he has a quite pronounced, thick scar, which extends down the middle of his chest to well below his navel. This is a substantially larger and more extensive scar than the scar caused by the victim's bite wound in Barnes, which the defendant cites in support of his proposition that Brown's scar was not sufficiently egregious to constitute a serious bodily injury. Moreover, in that case the only evidence introduced of the victim's scar was the victim's own testimony. Barnes, 954 S.W.2d at 765. Here, by contrast, the jury was able to see the victim's surgical scar and judge for itself whether it constituted a protracted or obvious disfigurement.

## CONCLUSION

Based on our review, we conclude that the evidence was sufficient for a rational jury to find the defendant guilty of especially aggravated robbery beyond a reasonable doubt. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-4-