IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 26, 2011

**STATE OF TENNESSEE v. RYAN LOVE**

**Direct Appeal from the Criminal Court for Washington County**
**No. 34273     Robert E. Cupp, Judge**

_____

**No. E2011-00518-CCA-R3-CD - Filed December 28, 2011**

_____

A Washington County jury convicted the Defendant-Appellant, Ryan Love, of reckless aggravated assault, a Class D felony. He received a suspended sentence of two years. The sole issue presented for our review is whether the evidence was sufficient to prove the element of serious bodily injury. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Jerry J. Fabus, Jr., Gray, Tennessee (on appeal); Donald Spurrell, Johnson City, Tennessee, (at trial) for the Defendant-Appellant, Ryan Love.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Erin McArdle, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** The Defendant-Appellant concedes in this appeal, as he did at trial, that he struck the victim, Kenton Parker, "three or four times" in the head on the night of October 15, 2007, as a result of a verbal confrontation at a bar. We will therefore focus primarily on the evidence produced at trial pertinent to whether the victim suffered serious bodily injury as a result of the assault. The victim testified that immediately following the assault, his coworkers, Steven O'Sullivan and Robin Reed, drove him to the hospital. He testified that he had "a broken nose, several lacerations, [and] a broken eye-socket." He also received

1

stitches for several lacerations around his right eye. Regarding his stitches, the victim said, "I can still feel the scar tissue a little bit[.]" Asked to show "any residual effects of the assault," the victim stepped down in front of the jury box and said, "Right here. I don't know if you can see up there. I don't know if the hair in the eyebrow is covering it now I think." At the time of trial, he had a scar at his right eye and the inside corner of his right eye no longer matched that of his left eye. He and his doctor considered plastic surgery, but the victim decided that his injury had "healed enough."

The victim described his pain as "very, very, very, high" and "extremely painful." He said, "The only thing that I've ever felt that was more painful was when I dropped an umbrella on my toe and the toenail came off." The victim stated that he was prescribed antibiotics and "pain medication." Due to his injuries, he missed six or seven weeks of work. He experienced numbness in his lips for several months. He also testified that he had to visit his doctor several more times for treatment. The victim maintained that he did not know the reason the Defendant-Appellant struck him.[1]

Exhibit 2, stipulated to by the parties, documented the victim's emergency room visit and confirmed that he was treated at Northside Hospital from 2:50 a.m. until 5:12 a.m. on the day of the offense.[2] The nurse's notes revealed the severity of the victim's pain as "moderate." The pain was centered at his face and nose, and the report further described it as "throbbing." The victim's facial lacerations were described as "simple" and treated with "1% Lidocaine," a local anesthetic. The victim received a total of ten sutures or staples. They were located both above and below his eye, on the bridge of his nose, and at the corner of his eye. Two of these were approximately three centimeters long, one was one and a half centimeters long, and one was one centimeter long. The victim was also treated for at least four fractures of his nasal and facial bones. The final report of the treating physician's impressions of the victim's injury was as follows:

1) Mildly comminuted displaced bilateral nasal bone fractures.

2) Nondisplaced fracture anterior bony nasal septum.

3) Small fracture involving the tip anterior process maxilla.

---

[1]The hospital records provide that the victim was "'unclear' as to what caused the altercation. He does state that he used a racial name after he was hit once[.]" Exhibit 2 also shows that the Defendant-Appellant was intoxicated when treated at the hospital.

[2]This 25-page exhibit is a compilation of reports from various hospital departments that treated the Defendant-Appellant on the night of the offense.

2

4) 3.0 to 4.0 depressed fracture right anterior wall maxillary sinus.

5) Small amount of blood products in the bilateral maxillary sinus.

6) Swelling in the soft tissues adjacent to the anterior process of the maxilla, nasal bones and extending to the inferior frontal scalp.

The "Discharge/Abstracting" sheet, which apparently contained hospital codes which corresponded to the type of injury that was treated, showed that the victim was treated for "HEADACHE," "OPEN WND FACE NOS-COMP," "CLSD FX FACIAL BONE" "ASSAULT-STRIKING W OBJ," "TD/DT VACCINE," "SKIN CLOSURE," and "REPAIR SUPERFICIAL WOUND (S)." Upon discharge, the victim was prescribed "AUGMENTIN (AMOXICILLIN/CLAV 875-125)" for ten days, advised to apply ice to his face, and instructed to return in three to five days for removal of his sutures. The victim's pain was documented as three or four out of ten when he left the hospital.

Several photographs taken in the days following the offense depicting the area surrounding the victim's right eye were admitted into evidence and shown to the jury. The photographs confirmed the victim's eye was bruised and swollen. There were cuts on his upper cheek, nose, brow, inner eye, and temple that were closed with stitches. The victim also had cuts and scrapes on his chin, lip, and cheek. His right cheek was bruised, and much of the right side of his face was swollen, including his eye, which appeared to be swollen shut. On the left side of his face, he had bruising under the eye.

Sara Parker, the victim's girlfriend at the time of the offense, testified and substantially corroborated the victim's testimony. After the attack, Parker went to the hospital with the victim, Reed, and O'Sullivan. She observed the victim's injuries immediately following the assault and described "major swelling" on one side of his face and jaw. Steven O'Sullivan and Robin Reed, both coworkers of the victim, testified and also corroborated the victim's testimony at trial.

The Defendant-Appellant testified that on the night of the offense, he went to a local bar after 2 a.m. The Defendant-Appellant explained that he knew the victim's girlfriend, Parker, and attempted to introduce himself to the victim; however, the victim put his hand on the Defendant-Appellant's shoulder, swung him around, and said, "[S]he – listen[s] to me you fucking n------." A fight then ensued resulting in the instant offense.

3

The Defendant-Appellant was convicted of reckless aggravated assault, a lesser included offense of aggravated assault. He has filed a timely appeal.

## ANALYSIS

On appeal, the Defendant-Appellant argues that "the evidence was insufficient as a matter of law to support the conviction of reckless aggravated assault." He concedes that he committed simple assault, but asserts that there was insufficient evidence of serious bodily injury, an element of reckless aggravated assault. The State contends that the evidence was sufficient to support a finding of serious bodily injury and the conviction of reckless aggravated assault.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

A conviction of reckless aggravated assault, as relevant here, requires the State to prove that the defendant recklessly caused serious bodily injury to another. T.C.A. § 39-13-102(a)(2) (2006). "Serious bodily injury" is defined as bodily injury that involves:

4

(A) A substantial risk of death;

(B) Protracted unconsciousness;

(C) Extreme physical pain;

(D) Protracted or obvious disfigurement; or

(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]

T.C.A. § 39-11-106(a)(34) (2006). "Bodily injury," in contrast, is defined to "include[] a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Id. § 39-11-106(a)(2). Concerning these definitions, this court has stated:

> While the phrase "serious bodily injury" . . . is not susceptible to precise legal definition, it must describe an injury of a greater and more serious character than that involved in a simple assault. The distinction between "bodily injury" and "serious bodily injury" is generally a question of fact for the jury and not one of law.

State v. Barnes, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997).

The Defendant-Appellant contends that the proof at trial did not establish serious bodily injury. He asserts that the State did not prove beyond a reasonable doubt that the victim's injuries involved either extreme physical pain or protracted or obvious disfigurement, the factors relied upon by the State to support serious bodily injury. The Defendant-Appellant relies on State v. Sims, in which this court held that the evidence of the victim's injuries was insufficient as a matter of law to support a finding of serious bodily injury based on extreme physical pain or protracted or obvious disfigurement. 909 S.W.2d 46, 49-50 (Tenn. Crim. App. 1995), abrogated on other grounds by State v. Charles Justin Osborne, No. 01C01-9806-CC-00246, 1999 WL 298220 (Tenn. Crim. App., at Nashville, May 12, 1999). In Sims, the victim was struck in the face with a pistol one time. Id. at 48. As a result, she had a broken and swollen nose, a bruised cheekbone, two black eyes, and a cut across the bridge of her nose. Id. She testified that she experienced extreme physical pain on her face and nose. Id. During a hospital visit that lasted approximately two hours, a doctor treated the victim with a surgical band-aid to close the laceration, and she was not prescribed pain medication. Id. at 49. The victim also testified that she consulted a plastic surgeon about the cut on her face, but she did not undergo plastic surgery. Id. at 48. She

5

missed five weeks of work because of her injuries. Id. Construing the meaning of "extreme physical pain" in light of the other statutory factors that constitute serious bodily injury, this court stated, "We do not believe that the pain commonly associated with a broken nose is extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty." Id. at 49. Although this court acknowledged "the difficulty of quantifying or measuring pain," we concluded that the evidence was insufficient to support the element of serious bodily injury based on extreme physical pain or protracted or obvious disfigurement. Id. at 49-50.

In cases following Sims, this court has applied its holding as to serious bodily injury to various injuries sustained by victims of physical alterations. In doing so, this court has explained that the subjective nature of pain is a question of fact to be determined by the trier of fact, in this case the jury. State v. Eric A. Dedmon, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App. Feb. 23, 2006). See State v. Holly Lack Earls, No. 01C01-9612-CC-00506, 1998 WL 15896, at *7 (Tenn. Crim. App. Jan. 16, 1998) (diabetic victim sustained serious bodily injuries including a broken finger, a broken arm, requiring a metal plate, injuries to his shoulder, legs, and ankles, loss of "a lot of blood," was in pain "for a long time," and was hospitalized "for a couple of days"); State v. Darren Matthew Lee, No. M1999-01625-CCA-R3-CD, 2000 WL 804674, at *4 (Tenn. Crim. App. June 23, 2000) (victim kicked "repeatedly" in the face, resulting in two black eyes, severe facial swelling and a torn lip, was unable to work for a week, suffered headaches for three to four weeks, and suffered "extreme physical pain"); State v. James Ruben Conyers, No. M2002-01007-CCA-R3-CD, 2003 WL 22068098, at *9-10 (Tenn. Crim. App. Sept. 5, 2003) (victim hospitalized for seven days with multiple head trauma, including deep scalp lacerations, bruising and swelling of the neck, and lost "a significant amount of blood"), perm. to appeal denied (Tenn. Jan. 26, 2004); State v. Chester Dale Gibson, No. M2005-01422-CCA-R3-CD, 2006 WL 770460, at *11 (Tenn. Crim. App. Mar. 24, 2006) (victim suffered repeated blows to the face causing fractures to the nasal and eye area, two black eyes, a bruise to the right temple, a bruised lip and swollen and bloody nose, and was in "extreme physical pain"), perm. to appeal denied (Tenn. Aug. 28, 2006).

While the proof of serious bodily injury in the present appeal was not overwhelming, taken in the light most favorable to the State, the victim testified that he sustained severe injuries to his face, including cuts and bruises throughout, a right eye which was swollen shut, and a swollen left eye. A photograph taken shortly after the altercation, as well as other eye-witnesses to the assault, confirmed the extent of the injury. The victim said that his pain level was "very, very, very high," that he was prescribed antibiotics and pain medication, that he had numbness in his lips for several months, and that he had several follow-up visits to a doctor for treatment. As have the other cases set out in this opinion, we distinguish the

6

injuries of this victim from those described in Sims and conclude that a reasonable jury could have found that the victim here suffered "serious bodily injury." The Defendant-Appellant is not entitled to relief.

## **CONCLUSION**

Upon our review of the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the victim suffered serious bodily injury based on the degree of pain that the victim suffered or the extent of his disfigurement. Accordingly, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE