IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

## STATE OF TENNESSEE v. TIMERELL NELSON

**Appeal from the Criminal Court for Shelby County**
No. 17-00970      Chris Craft, Judge

_____

### No. W2017-02279-CCA-R3-CD

_____

On August 25 and 26, 2017, the Defendant, Timerell Nelson, was convicted of especially aggravated robbery, attempted second degree murder, and employment of a firearm during the commission of criminal attempt second degree murder. The trial court sentenced the Defendant to a total effective sentence of 16 years and the Defendant now argues on appeal that the evidence was insufficient to sustain his especially aggravated robbery conviction because the victim did not suffer serious bodily injury. See Tenn. Code Ann. § 39-13-401(a). After thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; and William L. Johnson (at trial), and Harry E. Sayle, III (on appeal), Assistant Public Defenders, for the appellant, Timerell Nelson.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox and Jose Leon, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The Defendant was convicted of especially aggravated robbery, attempted second degree murder, and employment of a firearm during the commission of criminal attempt

second degree murder on August 25 and 26, 2017. The trial court sentenced him to 16 years in confinement at 100% for especially aggravated robbery, 10 years at 30% for attempted second degree murder, and 6 years at 100% for employment of a firearm during the commission of criminal attempt second degree murder, to be served in the Department of Correction. This totaled an effective 16-year sentence.

The facts leading up to the Defendant's conviction are not in dispute. On September 10, 2015, the Defendant and the victim, Herbert Pritchard, reconnected through social media after meeting on a dating website the year prior. Mr. Pritchard only knew the Defendant by his username, "Trouble-Boy-20," or "T." Mr. Pritchard testified at trial that on September 10, 2015, he picked up the Defendant from an apartment complex so that they could "chat and ride around." During their time together, the Defendant asked Mr. Pritchard for money and he refused to give him any, saying that he "didn't give grown men no money." Instead, they went to Mr. Pritchard's apartment where the Defendant offered to "masturbate for [Mr. Pritchard] and [Mr. Pritchard] could film it" in exchange for money.

Mr. Pritchard testified that the next day, September 11, 2015, he picked up the Defendant from a different location so that they could "hook up again and just ride around." They talked about being "bisexual and coming out of the closet," and stopped at a few stores, eventually deciding to visit Mr. Pritchard's friend, Nathaniel Woods. However, the Defendant refused to enter Mr. Woods's apartment, and the two left the apartment shortly after arriving because Mr. Pritchard "didn't want to make [the Defendant] feel uncomfortable" and therefore decided to drive him home. Mr. Woods's testimony at trial echoed Mr. Pritchard's recollection of events. After leaving the apartment, the Defendant requested that Mr. Pritchard drop him off on the side of a dead-end street. Mr. Pritchard testified that when he pulled over to drop the Defendant off, he "punched [Mr. Pritchard] in [his] face [and] in [his] jaw." Mr. Pritchard then turned to face the Defendant to ask him why he punched him, and the Defendant then shot him once in his neck, causing his arms to buckle.

After he shot Mr. Pritchard, the Defendant held the gun to Mr. Pritchard's head and repeatedly told him to "[gi]ve [him] [his] mother-f****** money" and that he was going to kill him. Mr. Pritchard testified that the Defendant grabbed him by his work uniform and tried to take his wallet but could not get to it because Mr. Pritchard's legs were stuck under the steering column. Instead, the Defendant took $160 out of Mr. Pritchard's front shirt pocket and walked away from the car without looking back. After regaining some feeling in his arms, Mr. Pritchard testified that he drove himself to the closest police precinct. He was later transported to the hospital via ambulance in critical condition.

Officer Kevin Coleman, who has been employed by the Memphis Police Department as a patrolman for six years, testified at trial that he was the officer who took Mr. Pritchard's statement at the police precinct on September 11, 2015. Officer Coleman recalled seeing Mr. Pritchard sitting on a parking post between cars in the precinct's parking lot with his hand on his cheek. When asked what was going on, Mr. Pritchard responded that he had "just got shot" and took his hand off of his cheek, causing blood to "start[] shooting out." Officer Coleman further testified that Mr. Pritchard had a hole in his cheek with "an exit wound in the back of his head," and was "in shock" and "fading in and out" while he tried to gather information from him. While another officer called for an ambulance, Mr. Pritchard told Officer Coleman that a man he met on an online dating site had shot him and gave Officer Coleman his cellular phone, which contained pictures and videos of the Defendant. Mr. Pritchard was further able to relay where the shooting had taken place before being transported to the hospital.

Mr. Pritchard's medical records were stipulated to at trial and no witness was presented to testify about their contents. The records indicate that he was diagnosed with a "Spinous Process Fracture," which was further described to include a "Neck injury, fracture" and "Transverse Process Fracture." Mr. Pritchard's records further indicate that he experienced numbness in his hands and shoulders and was discharged from the hospital with prescriptions for Percocet and Colace, with the recommendation that he seek orthopedic surgery to follow up his emergency care. Mr. Pritchard described the bullet as "clip[ping] [his] spinal cord," forcing him to take three months off from his job as a mechanic for the United States Postal Service, though it was recommended he take off six months. Mr. Pritchard testified that he was not able to fully perform his work duties for a year following the shooting due to numbness and loss of strength in his arms, and even needed help holding and turning a screwdriver at work. At trial, Mr. Pritchard had a scar on his neck from the shooting, which he testified would continue to grow due to his keloid skin. The jury was able to view Mr. Pritchard's scar in person after hearing his testimony.

Sergeant Sheila Green, who has been employed by the Memphis Police Department for twenty-one years, testified at trial that she was the crime scene investigator assigned to investigate Mr. Pritchard's shooting. She processed Mr. Pritchard's car for evidence and found blood on the driver's seat, a spent shell casing, a bullet fragment, and a bullet hole in the driver door.

Detective Justin Smith, who has been employed by the Memphis Police Department for seven years, testified that he was also assigned to investigate Mr. Pritchard's shooting. Detective Smith testified that he was able to pull images of the Defendant from the cellular phone that Mr. Pritchard gave Officer Coleman on the night of the shooting. He then used the image to issue a media release asking for help in

identifying the Defendant, who Mr. Pritchard only knew as "Trouble-Boy-20" and "T." The media release garnered an anonymous "Crime Stoppers" tip identifying the Defendant and directing Officer Smith to his Facebook page. Officer Smith retrieved a picture of the Defendant from his Facebook page and arranged a photographic lineup. He testified that Mr. Pritchard "immediately pointed out" the Defendant with "no hesitation" and wrote "[t]his is the man that shot me [and] said he would kill me" after circling the Defendant's picture in the lineup. Mr. Pritchard was able to identify the Defendant again in the courtroom.

At the conclusion of the trial, the jury convicted the Defendant of especially aggravated robbery, attempted second degree murder, and employment of a firearm during the commission of criminal attempt second degree murder. The Defendant now solely appeals his conviction of especially aggravated robbery.

## ANALYSIS

The Defendant argues that the evidence is insufficient to sustain his conviction of especially aggravated robbery. When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

- 4 -

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)).  "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two.  State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).  The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'"  State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).  The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence.  State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)).  Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury.  Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)).  This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact.  Id.

The Defendant argues that the evidence is insufficient to sustain his conviction of especially aggravated robbery because Mr. Pritchard only suffered "the gunshot wound to the neck" and therefore did not suffer serious bodily injury as is required for a conviction of especially aggravated robbery.  Tennessee Code Annotated section 39-13-403 defines especially aggravated robbery as robbery "accomplished with a deadly weapon; and where the victim suffers serious bodily injury."  Further, serious bodily injury is defined as bodily injury that involves:

> (A) A substantial risk of death;
> (B) Protracted unconsciousness;
> (C) Extreme physical pain
> (D) Protracted or obvious disfigurement;
> (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty; or
> (F) A broken bone of a child who is twelve (12) years of age or less.

Id. § 39-11-106(34).

Having reviewed the evidence in the light most favorable to the State, we find that there is sufficient evidence to sustain a conviction for especially aggravated robbery. Although the Defendant argues that Mr. Pritchard's gunshot wound to the neck is not a serious bodily injury, Mr. Pritchard testified that he was unable to fully perform his work duties for a year after the shooting and even needed help turning a screwdriver. He further had to take three months off of work and has a scar on his neck from the shooting that will continue to expand as time progresses. He medical records also indicate that he suffered a "Spinous Process Fracture," which is described as a fracture to his C4 vertebra.

The Defendant argues that because Mr. Pritchard was able to drive himself to the nearest police precinct after the shooting, he did not suffer serious bodily injury. Further, he argues that the growing scar on Mr. Pritchard's neck is not tantamount to "obvious disfigurement." See Tenn. Code Ann. § 39-11-106(34)(D). The Defendant also argues that although Mr. Pritchard was not able to fully perform his work duties for a year after the shooting, there was no testimony at trial that he still suffers weakness in his arms or any other testimony that established serious bodily injury. However, this court has found that medical records showing a bone fracture with discharge instructions to seek orthopedic surgery as follow up care equated to a serious bodily injury. See State v. Jawaras Beauregard, No. 2012-02312-CCA-R3-CD, 2013 WL 6047026, at *14-15 (Tenn. Crim. App. Nov. 14, 2013) (finding that temporary loss of use of a fractured elbow, as well as an obvious scar, constituted a serious bodily injury). Further, this court has consistently held that an obvious scar is enough to satisfy the requirements for a serious bodily injury. See, e.g., State v. James Richardson Reece, No. M2011–01556–CCA–R3–CD, 2013 WL 1089097, at *14 (Tenn. Crim. App. Mar. 14, 2013) (listing cases where this court has held that a scar constitutes serious bodily injury). The determination of whether an injury is a serious bodily injury is a question of fact for the jury. State v. Barnes, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997).

Accordingly, we find that Mr. Pritchard suffered serious bodily injury because of both an obvious disfigurement and the substantial impairment of a function of a bodily member. It is irrelevant that Mr. Pritchard's testimony did not include whether he still suffered weakness in his arms at the time of trial. He suffered a spinal fracture, weakness in his arms, and has a scar on his neck that will continue to expand with time. Further, the jury examined the scar in person at trial, and heard Mr. Pritchard's testimony regarding his injuries. Viewing the evidence in the light most favorable to the State, we find that a rational jury could easily find beyond a reasonable doubt that Mr. Pritchard suffered serious bodily injury, and that the Defendant was thus guilty of especially aggravated robbery. Therefore, the Defendant is not entitled to relief.

**CONCLUSION**

Based on the foregoing authorities and reasoning, we find that there was sufficient evidence to sustain a conviction of especially aggravated robbery, and we therefore affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE