IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville December 9, 2014

**DAVID LEE LEGGS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010-D-3048     Cheryl A. Blackburn, Judge**

—————————————————

**No. M2014-00866-CCA-R3-PC - Filed January 27, 2015**

—————————————————

Petitioner, David Lee Leggs, appeals the denial of his petition for post-conviction relief. He claims that he received ineffective assistance of counsel during trial and on appeal. After thorough review, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Elaine Heard, Nashville, Tennessee, for the petitioner, David Lee Leggs.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Glenn R. Funk, District Attorney General; Bret T. Gunn, Assistant District Attorney General, for the respondent, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

On July 27, 2010, Petitioner was indicted by the Davidson County Grand Jury of four counts of aggravated robbery, one count of attempted first degree murder, one count of possession of a firearm during the commission of a dangerous felony, and one count of being a convicted felon in possession of a firearm. Those charges arose from Petitioner's participation in an armed robbery of three individuals outside of a Korean restaurant in West Nashville.

After a jury trial, Petitioner was convicted of three counts of aggravated robbery. The jury acquitted Petitioner of the other aggravated robbery charge and could not reach a verdict on the remaining counts, which were later dismissed. Petitioner received an effective sentence of fifty years' imprisonment to be served at 100% because he was determined to be a persistent offender. Petitioner's sentence, the propriety of which was the only issue raised on direct appeal, was affirmed by this Court. *State v. David Lee Leggs*, No. M2012-00136-CCA-R3-CD, 2012 WL 6097274, at *1 (Tenn. Crim. App. Dec. 7, 2012), *perm. app. denied* (Tenn. Mar. 20, 2013).

On August 19, 2013, Petitioner filed a pro se petition for post-conviction relief, and counsel was appointed to assist Petitioner. An amended petition was filed on October 30, 2013, in which Petitioner argued that he received ineffective assistance of counsel at trial. Specifically, Petitioner complained that trial counsel: (1) failed to consult with him during critical stages of the trial process; (2) failed to adequately advise him about his decision to testify; (3) improperly questioned him during the direct examination of his testimony; (4) failed to diligently pursue a motion to suppress his statement to police; and (5) failed to properly investigate witnesses.

The post-conviction court held an evidentiary hearing on December 11, 2013, during which Petitioner and trial counsel offered the only testimony. Petitioner testified that he was unhappy with trial counsel's representation, although it was "all right" in the beginning. Trial counsel would not file pre-trial motions as requested by Petitioner, would not communicate with Petitioner at court appearances, and engaged in "several altercations" with Petitioner on the occasions when they actually met. These altercations entailed raised voices, "harsh language, jackets pulled off, [and] a lot of that stuff." Petitioner clarified that by "altercation" he meant "an argument that almost led into a fight" with trial counsel. On one occasion, trial counsel laughed at Petitioner and refused to file "motions for misidentification, photo lineup, and certain motions like that." Petitioner felt that his identification was a significant issue in his case. Trial counsel also refused to file a motion for a bond reduction because it would be denied by the trial court. The only motion that Petitioner recalled trial counsel filing was a motion to dismiss, which was denied by the trial court.

Petitioner asked trial counsel to withdraw his representation, but trial counsel never filed a formal motion to do so with the court. Eventually, Petitioner personally asked the court to remove trial counsel because the attorney-client relationship "went downhill" and was "bad." However, that request was denied.

At trial, Petitioner testified in his defense. Petitioner admitted that trial counsel discussed this decision with him. Petitioner initially intended not to testify because trial counsel warned him that the prosecution would cross examine him on his criminal

history. Ultimately, however, Petitioner decided to testify because trial counsel explained to him that it might "look bad" to the jury if he did not and that it also might help if he explained to the jury "what happened with the situation." During the direct examination of Petitioner, trial counsel inquired about his criminal history, which Petitioner felt was "real weird."

During cross-examination, Petitioner said that he could not recall trial counsel filing a motion to suppress Petitioner's statement to police. However, the post-conviction judge affirmed that a suppression hearing was held on October 3, 2011, a transcript of which was included in the court file. Petitioner acknowledged that the statement at issue contained his admission that he "had gotten into it with the owner of the restaurant and had . . . a fight with him and took his wallet and money." When the State questioned Petitioner about the kind of motion that he wanted trial counsel to file, Petitioner stated that he wanted a motion "to suppress [their] misidentification," referring to "when [a victim] got on the stand and said [he or she] couldn't see the person who robbed [him or her]." Petitioner admitted that identification by photographic lineup had not occurred in his case. Petitioner could not articulate a legal basis "to stop [the victims] from coming in and saying what they saw and whether or not they thought it was [Petitioner] that robbed them" other than "because they identified the wrong person."

Regarding his decision to testify, Petitioner admitted that trial counsel had discussed the decision with him. Petitioner explained, "He told me I had a choice not to do it or to do it." Trial counsel advised Petitioner that, by testifying, he could give the jury an alternative to the victims' version of the incident. Petitioner was aware that "it was ultimately [his] choice" to testify.

The post-conviction court then questioned Petitioner about his testimony at trial. Petitioner affirmed that he told the truth when he testified. Petitioner acknowledged that he testified to being involved in the crime, but he stressed that he did not know that his co-defendant had a gun and did not "testify that [he] was the one who aggravated robbed [sic] them with [a] weapon." Petitioner specifically admitted that he had been present at the crime with his co-defendant. Petitioner stated that he and trial counsel discussed the nature of his testimony before he took the stand, and trial counsel was aware that Petitioner's narrative would be, "I was there, but I'm [sic] not the one with the gun." Additionally, after the post-conviction court refreshed Petitioner's memory about the suppression hearing, Petitioner eventually admitted that he remembered the motion to suppress and the hearing.

Trial counsel testified that he has been licensed as an attorney for over ten years, and at the time of Petitioner's trial, around ninety percent of his legal work was criminal defense. In addition to the motion to suppress, trial counsel filed a notice of alibi that was

explained in a letter to Petitioner. However, after an investigation, trial counsel took no further action on that notice.

Trial counsel described Petitioner as "aggressive." Because Petitioner "spoke in a crude manner," trial counsel "resorted to communicating through letter[s]." Trial counsel explained:

> The first letter started in January, and it was a three or four page letter explaining the charges for every case. Incorporated in that letter was a plea offer from the State. I went to jail and actually handed that to him and gave him the discovery at the same time. And then I received a [Board of Professional Responsibility] notice in June of 2011. I responded to that. I responded to [Petitioner]. And then there were maybe two other letters after that. But he was held here in town, so he was brought to court quite a bit, and I saw him there.

Trial counsel confirmed that Petitioner directly asked the court for a new attorney prior to the trial. Trial counsel explained that this request happened "immediately after [Petitioner] tried to attack me in the back." Trial counsel opined that Petitioner had acted this way "just showing off for the other inmates in the back." Petitioner's request for new counsel was "maybe a week" before the trial.

Regarding, Petitioner's decision to testify, trial counsel explained:

> [W]e talked about the pros and cons. Obviously, it's really important, when you have a criminal history as lengthy as his, to let him know it's going to come out. You're going to get impeached, it's just part of our process. He can do it. I can do it. I feel like, as an attorney, if I don't do it the jury thinks I'm hiding something from them. So I tend to do that before the district attorney does it.

Trial counsel believed that Petitioner "did well on the stand" but "didn't like the result." Trial counsel acknowledged that he was of the opinion that it was "important" for Petitioner to present his version of the incident as an attempt to minimize his role in the incident.

> I tried to explain beforehand that [Petitioner's version] still doesn't alleviate the criminal responsibility component of this crime. Maybe the jury will go for it with the jury nullification. But at the end of the day, he had put himself there, he had admitted to being there, he admitted to taking property that wasn't his. That is per se robbery.

As to his overall performance, trial counsel reasoned, "I think the result was good from a legal perspective. [Petitioner] was charged with six counts. He was convicted of three. One of those was attempted first degree. You know, I hung the jury." Trial counsel did not "feel like there's anything that [he] would have done differently or argued differently in retrospect."

During cross-examination, trial counsel provided more details about the altercation that he had with Petitioner preceding Petitioner's request for new counsel. Trial counsel denied that he had been aggressive with Petitioner but admitted that he had removed his suit jacket during the encounter in an attempt to avoid having it soiled.

> [Trial Counsel]: If I remember the discourse between us, he called me a "punk-ass bitch." I took off my jacket and said jump.
>
> [Post-Conviction Counsel]: So you invited him to hit you basically?
>
> [Trial Counsel]: If he's going to jump at me, act aggressively towards me, I have every right to defend myself. This is a true man state.
>
> [Post-Conviction Counsel]: And so, is that how you feel an attorney should handle situations like that?
>
> [Trial Counsel]: At that point, I wasn't an attorney. . . .
>
>     . . . .
>
> [Post-Conviction Counsel]: Are you stating for the Court you were not his attorney at the time?
>
> [Trial Counsel]: I'm stating that I was being attacked, and I was defending myself.

Trial counsel also expressed his belief that Petitioner had been using the altercation as an attempt to delay the impending trial because, after his request for new counsel was denied, Petitioner began cooperating well with counsel.

At the end of the hearing, the court made exhibits of the transcript of the trial and the motion to suppress and took the matter under advisement. On April 23, 2014, the post-conviction court entered an order denying post-conviction relief. Petitioner timely appealed.

*Analysis*

On appeal, Petitioner contends that that the trial court erred in denying his petition for post-conviction relief because of ineffective assistance of trial counsel. Specifically, Petitioner contends (1) trial counsel's poor performance resulted in a heated altercation, after which Petitioner requested new counsel; (2) trial counsel refused to file a motion to challenge the victim's identification or a motion for bond reduction; and (3) trial counsel failed to adequately advise Petitioner of the nature and consequences of testifying at trial. Petitioner also claims that he received ineffective assistance of appellate counsel because appellate counsel only raised one issue on direct appeal and omitted a challenge to the sufficiency of the evidence. The State argues that the trial court properly denied the petition because Petitioner has failed to satisfy either the deficiency or prejudice requirements by clear and convincing evidence. The State further argues that Petitioner's claim of ineffective assistance by appellate counsel is waived because it was not raised in the post-conviction court. We agree with the State. *See State v. Smith*, 436 S.W.3d 751, 775 n.16 (Tenn. 2014) (citing *State v. Bishop*, 431 S.W.3d 22, 43-44 (Tenn. 2014)) (observing that "issues are generally waived unless they were raised in or presented to the trial court").[1]

*A. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court gives deference to the post-conviction court's findings as to witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence. *Momon*, 18 S.W.3d at 156 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented below and is bound by the findings of the post-conviction court unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's

---

[1] We also note that, from our review of the record and the briefs, it appears that Petitioner does not raise on appeal all issues that were identified in his petition and amended petition. Any issues that were raised in the post-conviction court but that have not been pursued on appeal are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal.").

conclusions of law and application of the law to the facts are subject to de novo review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

### B. Ineffective Assistance of Counsel

Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *Burns*, 6 S.W.3d at 461. In order to receive post-conviction relief based on a claim of ineffective assistance of counsel, a petitioner must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

To establish deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. Counsel's performance is considered reasonable "if the advice given or the services rendered [were] within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). This Court "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. A petitioner is not entitled to the benefit of hindsight to second-guess a reasonably based trial strategy or a sound, but unsuccessful, tactical decision. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Although offered on appeal as a supporting basis for his ineffectiveness claim, Petitioner does not articulate exactly how the physical altercation with trial counsel constitutes ineffective assistance. Petitioner did not identify this occurrence in his initial pro se petition or in his amended petition for post-conviction relief; however, considerable attention was given to it during the post-conviction hearing. In its order, the post-conviction court briefly mentioned the encounter for the effect it had on the allegedly ineffective communication that trial counsel maintained with Petitioner

throughout the trial process.[2]  The post-conviction court did not consider the altercation as an independent basis for ineffective assistance.  Because it was not presented to the post-conviction court as an independent basis for ineffective assistance, we deem this argument waived.  *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2013).

Yet, even if we did consider this argument on its merits, it would not entitle Petitioner to relief.  A dispute between a defendant and trial counsel may constitute ineffective assistance where the altercation or disagreement creates an actual conflict of interest.  *See, e.g.*, *Thaddeus Johnson v. State*, No. W2014-00053-CCA-R3-PC, 2014 WL 7401989, at *5 (Tenn. Crim. App. Dec. 19, 2014).  However, the post-conviction court expressly accredited trial counsel's testimony, and trial counsel testified that the altercation and any other personal disputes were the direct result of Petitioner's own inappropriate behavior toward trial counsel.  Petitioner may not take advantage of a "conflict of [his] own creation."  *Id.* at *8.  This issue is without merit.

Regarding trial counsel's failure to file pre-trial motions as requested by Petitioner, the post-conviction court credited trial counsel's testimony that "there was no legal basis to file any pre-trial motions other than the motion to suppress statement that he filed."  We conclude that this issue is also without merit.  Petitioner could not articulate any reason or legal basis to suppress the testimonies of the victims who positively identified him or the testimony of any victim who could not.  Any disagreement with the testimony of the victims was a matter to be pursued on cross-examination or closing argument, not by pre-trial motion.  Additionally, there was no photo lineup that could have been challenged as unfairly suggestive.  Moreover, as indicated by trial counsel, there was considerable circumstantial evidence and Defendant's own testimony[3] that proved that Petitioner was, in fact, present during and involved in the commission of the crimes for which he was convicted.[4]  Trial counsel's conduct was not deficient by refusing Petitioner's request to file a baseless motion.

---

[2] In his brief, Petitioner does not mention or discuss the post-conviction court's finding that trial counsel did not render ineffective assistance for lack of communication.  Thus, we deem this argument abandoned or waived.

[3] During the post-conviction hearing, trial counsel stated that he was "at a loss to come up with a defense theory" given the substantial amount of incriminating evidence against Petitioner.

[4] It seems that Petitioner misunderstands the concept of criminal responsibility, on which the jury was instructed by the trial court.  *See generally*, *State v. Dickson*, 413 S.W.3d 735, 744 (Tenn. 2013) ("Criminal responsibility is not a separate crime, but 'a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person.'" (quoting *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999))).  "A separate indictment for criminal responsibility is unnecessary when a defendant has been indicted for the primary offense." *State v. Sherman*, 266 S.W.3d 395, 408 (Tenn. 2008) (citing *Lemacks*, 996 S.W.2d at 170; *State v. Barnes*, 954 S.W.2d 760, 763 (Tenn. Crim. App. 1997)).

As for trial counsel's refusal to file a motion for bond reduction, Petitioner has not offered any evidence or argument as to the probability that the outcome of the proceeding would have been any different had trial counsel heeded Petitioner's request on this matter. Petitioner is not entitled to relief on this basis.

Petitioner's final argument is that trial counsel failed to adequately advise Petitioner of the nature and consequences of his decision to testify at his trial. Additionally, Petitioner asserts that he was unaware that trial counsel was going to question him about his criminal history during direct examination. The post-conviction court found that Petitioner failed to prove these claims by clear and convincing evidence. We agree. The evidence in the record wholly fails to support Petitioner's argument. At the post-conviction hearing, Petitioner admitted, multiple times, that trial counsel discussed this decision with him and that Petitioner knew it was his decision to make. Petitioner also admitted that trial counsel informed him that he would be questioned about his criminal history if he chose to testify. Petitioner also admitted that he made his decision to testify after trial counsel informed him that it would be his opportunity to tell the jury his side of the story and to explain why the State's theory of the case was inaccurate. Petitioner further admitted that trial counsel then helped him prepare for his testimony, which was, in essence, "I was there, but I [was] not the one with the gun." Petitioner testified accordingly. We agree with trial counsel's summation that Petitioner simply "didn't like the result" of the trial, despite only being convicted on three of seven charges.

Furthermore, we find no fault in trial counsel's decision to question Petitioner about his criminal history on direct examination, a common strategy for building credibility and rapport with the jury. Even if Petitioner was not aware that trial counsel was going to broach this subject matter, Petitioner has not shown any prejudice from his doing so. Petitioner merely expected this questioning to come from the prosecution instead.

*Conclusion*

After a careful review of the arguments and the record, we conclude that Petitioner failed to prove his claim of ineffective assistance by clear and convincing evidence. Therefore, the denial of post-conviction relief is affirmed.

_____
TIMOTHY L. EASTER, JUDGE