IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 7, 2020 Session

## STATE OF TENNESSEE v. JOHNTEL BILLINGS

**Appeal from the Circuit Court for Madison County**
No. 19-6    Roy B. Morgan, Jr., Judge

_____

### No. W2019-01596-CCA-R3-CD
_____

The defendant, Johntel Billings, was indicted for one count of aggravated assault (Count 1), one count of attempted aggravated robbery (Count 2), one count of simple assault (Count 3), and one count of vandalism (Count 4).  A Madison County jury convicted the defendant of aggravated assault, simple assault, and vandalism.  The trial court imposed a four-year sentence with the Tennessee Department of Correction.  On appeal, the defendant argues the evidence was insufficient to support her aggravated assault conviction.  The defendant also argues the trial court erred in sentencing her to four years of confinement, rather than probation.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Brennan M. Wingerter, Appellate Director, Tennessee Public Defenders Conference, Franklin, Tennessee (on appeal); Jeremy B. Epperson, Assistant Public Defender, Jackson, Tennessee (at trial), for the appellant, Johntel Billings.

Herbert H. Slatery III, Attorney General and Reporter; Katherine H. Decker, Assistant Attorney General; Jody Pickens, District Attorney General; and Lee R. Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual and Procedural Background*

Mangu Patel and her husband, Umesh Patel, were nightshift employees at the Executive Inn in Jackson, Tennessee, on the morning of September 2, 2018.  As such, Mr.

Patel's duties included inspecting the hotel property every two hours. Between 4:00 and 5:00 in the morning on September 2, Mr. Patel received a complaint about noise coming from the parking lot. When he left the office to respond to the complaint, he found the defendant, Johntel Billings, and her friend, Scotty Rowe, sitting on the hotel steps facing the hotel's parking lot. Mr. Patel approached the two and told them to "go in [their rooms]." When he turned to leave, Mr. Patel was attacked by the defendant and Mr. Rowe. The altercation was recorded by Executive Inn video cameras. The recording was played for the jury.

Mr. Patel testified the defendant and Mr. Rowe pushed him to the ground twice and hit him multiple times. The two then reached into his pockets and repeatedly demanded, "give me some money." He confirmed the video recording showed him bleeding badly from the attack. While the defendant and Mr. Rowe attacked Mr. Patel, Mrs. Patel heard noises coming from the parking lot, left the hotel office, and approached the altercation. The defendant hit Mrs. Patel and threw her phone on the ground. When the attack finally ended, Mrs. Patel called the police, and Mr. Patel was taken to the hospital. Mr. Patel sustained a broken right wrist and injuries to his right leg and eye. Mr. Patel testified that he underwent surgery during which "needles" were placed in his wrist and were removed three months later. Mr. Patel's doctor also instructed him to wear a brace on his wrist for three more months. Mr. Patel still needed, and was wearing, his wrist brace eight months after the attack. Though he could walk, Mr. Patel's doctor instructed him to refrain from extraneous activity. As a result, Mr. Patel was unable to work for six months.

Mrs. Patel confirmed the video recording came from the Executive Inn's security system and accurately recorded the defendant hitting her and throwing her phone on the ground. She also confirmed that she and Mr. Patel were able to walk back to the office after the attack and that the video recording showed the same. Shortly after returning to the office, Mrs. Patel called 9-1-1.

Officer Jeremy Dunlap with the Jackson Police Department arrived at the scene and observed that both Mr. and Mrs. Patel had "multiple very large knots, bruises and abrasions on their face, facial area." Officer Dunlap's investigation revealed the defendant and Mr. Rowe were the aggressors and caused Mr. and Mrs. Patel's injuries. The State then rested.

The defendant testified in her own defense. On September 2, 2018, the defendant was 19 years old and had been living at the Executive Inn for around eleven months. The morning of the incident, the defendant and Mr. Rowe were sitting on the steps of the Executive Inn when Mr. Patel came out of the hotel office and stated: "What is your kind doing out? What are you doing out at this time of night? You're scaring away customers." Upset by the racial slur, the defendant and Mr. Rowe began arguing with Mr. Patel and asked what he meant by "our kind." According to the defendant, Mr. Patel then spat on

her. It was Mr. Patel's comment combined with his conduct that led the defendant to attack Mr. Patel, and later Mrs. Patel.

In reviewing the video recording of the incident, the defendant explained she primarily fought with Mrs. Patel and noted the recording only showed Mr. Rowe going through Mr. Patel's pockets. Though the defendant did not go through Mr. Patel's pockets, she did hit him and kick him in the head. The defendant stated the altercation was not planned or intentional, she did not instruct Mr. Rowe to rob Mr. Patel, and the two did not discuss robbing Mr. Patel before the altercation occurred.

The defendant expressed remorse for her actions, acknowledged she should not have behaved in such a violent way, and recognized her conduct was not an appropriate way to handle her anger. The defendant also admitted she vandalized Mrs. Patel's phone and assaulted Mr. and Mrs. Patel. However, she disagreed that she committed aggravated robbery and aggravated assault.

After reviewing all of the evidence, the jury found the defendant guilty of aggravated assault against Mr. Patel, simple assault against Mrs. Patel, and vandalism against Mrs. Patel. The jury found the defendant not guilty of attempted aggravated robbery against Mr. Patel. Because the defendant was nine months pregnant at the time of trial, the trial court allowed the defendant to remain on bond until her sentencing hearing and ordered the defendant to contact the Tennessee Department of Correction in order to be interviewed for her presentence report.

*Sentencing Hearing*

A sentencing hearing was held on July 8, 2019, at which the State introduced the defendant's pre-sentence report. The report stated the defendant was allowed to remain on bond after her conviction because she was nine months pregnant, but she was ordered to contact a probation officer for a pre-sentence interview. The report showed the defendant failed to contact the probation officer and had a criminal history for driving without a license, violation of the financial responsibility law, and public intoxication.

The defendant testified at the sentencing hearing and requested the trial court place her on probation. She recalled the trial court ordering a pre-sentence report and telling her someone would be contacting her to obtain her statement. The defendant had a working phone at the time of trial, on May 17, 2019. However, shortly after being convicted, she went on maternity leave and could no longer afford her cell phone service. The defendant gave birth to her son on May 28, 2019, during which time her phone was "off" and continued to be inoperable at the time of the sentencing hearing on July 9, 2019. Because her phone was not "on," the defendant never contacted her probation officer.

From the time her child was born until the day of the sentencing hearing, the defendant spent her time at home "trying to get things together" for her child. According to the defendant, the city bus was her main form of transportation, and she used it to get to her doctor's appointments and her attorney's office. If placed on probation, the defendant would take the bus or have a relative drive her to meet with her probation officer. The defendant explained she would soon be seeking employment as her maternity leave ended. As such, she expected to be able to afford a cell phone and maintain contact with her probation officer.

The defendant explained she had many altercations with the Patels prior to the incident on September 2, 2018, and admitted that the police were usually involved. The defendant again recognized that her actions on the day of the incident were not the appropriate response to being spat on by Mr. Patel.

On cross-examination, the defendant confirmed that she lived with her grandmother who has a working phone. The defendant's mother and sister were present at the hearing, and the defendant admitted they too had working phones. When asked why she did not use a family member's phone to contact her probation officer, the defendant stated she was occupied with making plans for her child and her "mother and sister work a lot."

The trial court then questioned the defendant. The defendant stated no phone records associated with her phone number exist from May 17, 2019 to July 9, 2019. She did, however, admit her phone worked for a short period of time after trial before she ran out of minutes. She explained the phone was not active, and if someone were to call her phone number, they would not get a response. She admitted, however, that she had a "text app" on her phone that, when connected to WIFI, allowed her to send and receive text messages.

The defendant considered asking her attorney about the meeting with her probation officer but did not because she was told the probation officer would contact her for an interview. The defendant acknowledged she could have asked her attorney to help her set up a meeting but did not take the initiative to do so. The defense then rested.

The trial court weighed the evidence, and after finding the defendant committed a "vicious" and "horrible" attack, sentenced the defendant to four years in confinement for the aggravated assault conviction against Mr. Patel. For the assault and vandalism convictions against Mrs. Patel, the defendant was sentenced to eleven months and twenty-nine days. All sentences were to run concurrently.

The defendant filed a motion for new trial on August 12, 2019, which was denied by the trial court. The defendant filed a timely notice of appeal on September 6, 2019.

***Analysis***

On appeal, the defendant argues the evidence is legally insufficient to support her conviction of aggravated assault against Mr. Patel. While the defendant concedes she assaulted Mr. Patel, she asserts there was insufficient evidence to prove serious bodily injury, an element of aggravated assault. The defendant also contends the trial court erred in sentencing her to four years in confinement. The State, however, asserts that the evidence was sufficient to support the defendant's conviction for aggravated assault and that the trial court property exercised its discretion in sentencing the defendant to four years in confinement. After our review, we agree with the State.

*A) Sufficiency of the Evidence*

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

The defendant was convicted of aggravated assault, a Class C felony. Tennessee Code Annotated sections 39-13-101(a)(1) and 39-13-102(a)(1)(A)(i) provide that a person commits aggravated assault by intentionally or knowingly committing an assault that results in serious bodily injury to another. A person commits assault by intentionally, knowingly, or recklessly causing bodily injury to another. Tenn. Code Ann. 39-13-101(a)(1). "Serious bodily injury" is defined as bodily injury that involves: (A) a substantial risk of death; (B) protracted unconsciousness; (C) extreme physical pain; (D) protracted or obvious disfigurement; (E) protracted loss or substantial impairment of function of bodily member, organ or metal faculty; or (F) a broken bone of a child who is twelve (12) years of age or less. Tenn. Code Ann. § 39-11-106(a)(36). "Protracted" in this context means "delayed or prolonged in time." *State v. Carroll*, No. E2013-01781-CCA-R3-CD, 2014 WL 1759101, at *5 (Tenn. Crim. App. Apr. 30, 2014). In contrast, "bodily injury" involves "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily members, organ, or mental faculty." *Id*. § 39-11-106(a)(3). Concerning these definitions, this Court has stated:

> While the phrase "serious bodily injury" . . . is not susceptible to precise legal
> definition, it must describe an injury of a greater or more serious character

than that involved in a simple assault. The distinction between "bodily injury" and "serious bodily injury" is generally a question of fact for the jury and not one of law.

*State v. Barnes*, 954 S.W.2d 760, 765-66 (Tenn. Crim. App. 1997).

This Court has explained that when determining whether a victim's injuries amount to serious bodily injury the "subjective nature of pain is a question of fact to be determined by the trier of fact." *State v. Ryan Love*, No. E2011-00518-CCA-R3-CD, 2011 WL 6916457, at *4; *see State v. Eric A. Dedmon*, No. M2005-00762-CCA-R3-CD, 2006 WL 448653, at *5 (Tenn. Crim. App. Feb. 23, 2006) ("The difference between 'physical pain' and 'extreme physical pain' is analogous to the difference between 'bodily injury' and 'serious bodily injury,' and as such, determining the severity of pain suffered is within the province of the jury."); *see also State v. Holly Lack Earls*, No. 01C01-9612-CC-00506, 1998 WL 15896, at *7 (Tenn. Crim. App. Jan. 16, 1998) (finding serious bodily injury where the victim's injuries include a broken finger, a broken arm--requiring a metal plate, injuries to his shoulder, legs, and ankles, loss of "a lot of blood," was in pain "for a long time," and was hospitalized "for a couple of days"); *State v. Darren Matthew Lee*, No. M1999-01625-CAA-R3-CD, 2000 WL 804674, at *4 (Tenn. Crim. App. June 23, 2000) (holding serious bodily injury occurred where the victim was kicked "repeatedly" in the face, resulting in two black eyes, severe facial swelling and a torn lip, was unable to work for a week, suffered headaches for three to four weeks, and suffered "extreme physical pain"); *State v. Cheaster Dale Gibson*, NO. M2005-01422-CAA-R3-CD, 2006 WL 770460, at *11 (Tenn. Crim. App. Mar. 24, 2006) (finding the victim suffered serious bodily injury after experiencing repeated blows to the face causing fractures to the nasal and eye area, two black eyes, a bruise to the right temple, a bruised lip and swollen and bloody nose, and was in "extreme physical pain"), *perm. to appeal denied* (Tenn. Aug. 28, 2006).

The defendant contends the proof at trial did not establish serious bodily injury. She asserts Mr. Patel was unable to verbalize his injuries at trial and "because the State did not introduce any medical records in this case, there was no proof to support the speculation in the pre-sentence report that 'at least one of the victims . . . would have had medical care.'" The State argues the evidence at trial was sufficient for any rational juror to conclude beyond a reasonable doubt that Mr. Patel suffered serious bodily harm.

Viewing the evidence in the light most favorable to the State, the record reveals the defendant kicked Mr. Patel as he was trying to escape the attack from the defendant and Mr. Rowe. The defendant admitted to the same. Officer Jeremy Dunlap testified Mr. and Mrs. Patel had "multiple very large knots, bruises and abrasions on their face." Mr. Patel

testified he sustained injuries to his face, wrist, and leg. Mr. Patel was hospitalized and had to have surgery on his broken wrist. He had "needles" surgically placed in his wrist for three months and still required a brace on his wrist as he testified at trial eight months later. Due to his injuries, Mr. Patel was unable to work for six months. The attack, which the trial court characterized as "vicious" and "horrible," was captured on video and played for the jury.

The record reflects the defendant's actions amounted to assault because she, admittedly, intentionally kicked Mr. Patel and caused injuries to his face, wrist, and leg. The injury that resulted from the defendant's attack was prolonged in time because Mr. Patel's wrist was broken, required surgery, and "needles" were placed in his wrist for three months. The injury was so severe that Mr. Patel's still needed to wear a brace eight months after the attack, and he was unable to work for six months due to his injuries. Based on the evidence presented not only did the defendant assault Mr. Patel, but Mr. Patel's wrist injury was so severe that he suffered "protracted loss or substantial impairment of function" to his wrist, which elevated the harm suffered to "serious bodily injury." As a result, the evidence is sufficient to satisfy the serious bodily harm element necessary for an aggravated assault conviction.

Based on the verdict returned by the jury, it is clear the jury found Mr. Patel's broken wrist and the supporting video evidence of the defendant kicking Mr. Patel in the head as sufficient to find the defendant inflicted serious bodily harm on Mr. Patel. This Court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Accordingly, the evidence was sufficient for the trier of fact to find beyond a reasonable doubt that the defendant's violent actions on the day of the incident caused Mr. Patel to suffer serious bodily harm. The defendant is not entitled to relief.

*B) Sentencing*

The defendant argues the trial court erred in sentencing her to four years in confinement. In addition to noting that she is a new mother, the defendant argues the trial court failed to make a "common sense determination" that confinement was necessary to provide effective deterrence to others. She also argues confinement was not appropriate because the facts and circumstances of the case are no more egregious than any other aggravated assault involving an allegation of serious bodily injury. The State contends the trial court properly exercised its discretion in finding the defendant was not a suitable candidate for probation. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the

pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on her own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See id.* §§ 40-35-114, -210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in sections 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The 2005 revised sentencing statutes advise that a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). No criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must show that the alternative

sentencing option imposed "will subserve the ends of justice and the best interest of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 11, 9-10 (Tenn. 2000).

Before imposing a sentence of full confinement, the trial court should consider whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;" "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;" or "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]" Tenn. Code Ann. § 40-35-103(1)(A)-(C).

As noted, the defendant was convicted of aggravated assault, a Class C felony. As a Range I offender, the defendant faced a sentencing range of three to six years. The State submitted the following enhancement factors applied to the defendant: (1) the defendant has a previous history of criminal convictions or behavior; (2) the defendant was the leader in the commission of the offense; (3) the offense involved more than one victim; (5) the defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense; and (8) the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (2), (3), (5), and (8). The State argued that while the defendant's criminal history was not significant, the video footage of the incident showed two people attacking the victims, and the defendant attacking Ms. Patel and kicking Mr. Patel in the head. Under these circumstances, the State requested the defendant receive the maximum sentence of six years in confinement.

The defendant requested the trial court place her on probation and consider mitigating factors when determining her sentence. The defendant asserted two mitigating factors were applicable: she acted under strong provocation after being spat on by Mr. Patel and the catchall factor, which is "any other factor consistent with the purpose of the sentencing guidelines." Tenn. Code Ann. § 40-35-113(2), (13).

In determining the defendant's sentence, the trial court considered the defendant's testimony, the evidence offered at trial, the pre-sentence report, the sentencing principles, arguments of counsel, the nature and characteristics of the criminal conduct, and the enhancement and mitigating factors submitted by the parties. Concerning the mitigating factors, the trial court found the proof did not support the defendant's claim that she acted under strong provocation. The trial court found that the video footage did not show the defendant being spat on, and even if the defendant was spat on, that act did not mitigate the fact that the defendant viciously beat and kicked Mr. Patel. The trial court found no other mitigating factors applied to the defendant's case.

Concerning the enhancement factors, the trial court found the defendant's criminal history was not significant enough to be given serious weight. As to whether the defendant was the leader in the commission of the crime, the trial court found that the defendant and Mr. Rowe were "pretty much leading each other," and both "viciously attacked" the Patels. Yet, the trial court found the defendant was "a little more vicious" than Mr. Rowe and, as a result, weighed the factor against the defendant. The trial court did not give any weight to the "more than one victim" factor because the aggravated assault was against one victim, Mr. Patel, and the assault was against a different victim, Mrs. Patel. Based on the enhancement and mitigating factors, the evidence produced at trial and during the sentencing hearing, the sentencing principles and guidelines, and the arguments of counsel, the trial court imposed a sentence of six years.

Next, the trial court considered whether probation or some other type of alternative sentencing would be appropriate. Initially, the trial court expressed great concern with the fact that the defendant did not give just cause for why she failed to contact her probation officer despite being ordered to do so by the trial court. The trial court noted the defendant had an attorney and she knew where his office was located, and yet failed to enlist his help in setting up a meeting with her probation officer. Moreover, the defendant has a supportive family, and while the defendant's phone may not have been working, phones were widely available to her. Yet, the defendant did not attempt to comply with the trial court's order to contact her probation officer. Based on the defendant's lack of effort and concern regarding the pre-sentence report, the trial court found the defendant would not abide by the terms of probation, was unable to follow court rules, and was not amenable to correction. The trial court weighed the defendant's total disregard for the court's orders against the defendant.

Regarding the defendant's physical and mental condition and social history, the trial court noted the defendant had a minimal criminal history and a newborn child that was healthy, safe, and under the care of a family member. However, the facts and circumstances surrounding the attack showed "horrible conduct" that resulted in a "vicious" verbal and physical attack. The trial court weighed those facts and circumstances surrounding the offense and the nature and circumstances of the defendant's criminal conduct heavily against the defendant. For those reasons, the trial court determined the defendant was not a candidate for alternative sentencing and less restrictive measures than confinement would take away from the seriousness of the offense. The trial court also found the defendant's prison sentence would deter others from committing such a violent attack and that it would be an injustice not to impose a prison sentence.

The trial court did not err in denying probation based on its determination that the defendant's incarceration would avoid depreciating the seriousness of the offense and

provide an effective deterrence to others. Further, the record reflects the trial court properly considered the relevant purposes and principles of Tennessee's sentencing statutes and imposed a sentence within the applicable range for the defendant's Class C felony offense of aggravated assault. *Bise*, 380 S.W.3d at 709-10. The trial court then made the requisite findings on the record in support of its ruling. Accordingly, the trial court did not abuse its discretion and we affirm the defendant's sentence of four years' incarceration.

### *Conclusion*

Based on the forgoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE